## COLLINS v. STATE.

1. The state constitution (section 9, art. 11) prohibits the auditor from drawing a warrant upon the state treasurer, except in pursuance of an appropriation for the specific purpose first made.

2. When an appropriation made by the legislature for any specific purpose has been exhausted, the action of the auditor in refusing to draw further warrants for that specific purpose is proper and right.

3. The terms of all territorial officers whose offices were created by the laws of the territory, and filled by appointment of the governor of the territory, expired at the end of 10 days after the expiration of the term of office of the governor by whom such appointments were made. Chapter 101, Terr. Laws 1889.

4. On the 2d day of November, 1889, the office of the governor of the territory of Dakota expired by reason of the legal organization of the states of North and South Dakota. Ten days thereafter the offices of all appointive territorial officers expired, except such as were continued by reason of section 4, art. 26, of the schedule of the state constitution.

5. The appointment and acceptance of the office of veterinary surgeon by the plaintiff, under the provisions of the territorial statute in force at the time, and the continuance of the same under the provisions of the state constitution, left his office without any fixed term; and a law reducing the salary during the time he is performing the duties of it does not come within the prohibition of that clause in section 3 of article 12 of the constitution which declares that "the compensation of no public officer shall be increased or diminished during his term of office."

6. The territorial statute creating the office of veterinary surgeon fixed the pay for his services at $2,500 per annum. March 10, 1890, the first state legislature appropriated for his salary $1,200. The plaintiff served as such veterinary surgeon from the 8th day of March, 1890, to the 8th day of March, 1891, and was paid at the rate of $1,200 per annum. In a suit brought to recover at the rate fixed by the territorial

statutes, *held*, that the legislature had expressed its purpose to reduce, for the time being, the salary of the veterinary surgeon, and that the plaintiff could not recover.

(Syllabus by the Court. Opinion filed April 5, 1892.)

Original action by D. E. Collins against the state to recover for services as state veterinary surgeon. Action dismissed.

*H. C. Preston*, for plaintiff.

The repeal of a law by implication is not favored by the courts. 2 Barb. 316; Naylor v. Field, 29 N. J. 287; State v. Berry, 12 Iowa, 525; Dodge v. Ludley, 10 Ohio, 177; State v. Com., 37 N. J. 240; Atty. Gen. v. Railroad, 35 Wis. 425; Rounds v. Waymart, 81 Pa. St. 395; Henderson's Tobacco, 11 Wall. 652; Atty. Gen. v. Smith, 1 Wis. 525; Somerset v. Jones, 74 Pa. St. 61; Covington v. East St. L., 78 Ill. 548. The repugnancy between two statutes should be very clear to warrant a court in holding that the latter statute repeals the former. Phelps v. Hawley, 152 N. Y. 123; Kingsland v. Palmer, *Id.* 83; People v. Smith, 47 N. Y. 330; 9 Barb. 260. The court must uphold the prior law if both will subsist together. Brown v. Lease, 5 Hill, 221. The legislature has no power to diminish an officer's compensation during his term of office. Section 3, art. 12, Const.; Polk v. Minnehaha, 5 Dak. 129. Section 2333, Comp. Laws, is not repealed, and it is sufficient authority for the state auditor to allow the claim. Carr v. State, 26 N. E. 778; Rosline v. State, 20 Ind. 328; Newell v. People, 33 Pa. St. 278; 43 Ala. 420; State v. Hickman, 23 Pac. 740.

*Robert Dollard, Attorney General,* for defendant.

The provisions of section 15, c. 32, Laws of 1887, amount to an appropriation. Gilbert v. Moody, 25 Pac. 1092; State v. Kenney, 26 *Id.* 197. Section 2333, Comp. Laws, is repealed by sections 1, 26, c. 10, Laws of 1890.

BENNETT, J.    This is an original action brought to recover the sum of $1,300 alleged to be due the plaintiff for services as veterinary surgeon of the state. The complaint alleges that the plaintiff was duly appointed, qualified, and acted as veterinary surgeon; and that by virtue of his appointment, qualification, and acts as such there is due him, as a balance on his salary, between the 8th day of March, 1889, and the 8th day of March, 1890, the

sum of $1,300. To this complaint the attorney general files a demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action. The territorial law creating the office of veterinary surgeon is contained in sections 2320-2339, inclusive, Comp. Laws. Section 2333, among other things, provides that "the veterinary surgeon shall receive for his services the sum of two thousand five hundred dollars per annum, together with his necessary traveling expenses actually paid out in the performance of his duty. * * * He shall hold his office for two years." The complaint alleges that the plaintiff was appointed on the 3d day of June, 1889, and continued to so act until the 8th day of March, 1891. That from the date of his appointment until the 8th day of March, 1890, he received a salary at the rate of $2,500 per annum, but that since that day, and until the 8th day of March, 1891, he has only received as a salary $1,200, leaving the sum of $1,300 due and unpaid; which claim has been duly presented to the state auditor for allowance, but that said auditor has refused to allow it. The state auditor very justly and legally refused to draw his warrant for the amount claimed in the complaint of the plaintiff. The general appropriations of the legislative session for the current expenses of the state, approved March 10, 1890, provided among other things, "for the salary" of veterinary surgeon the sum of $1,200, and for expenses $500. Had the state auditor drawn his warrant for more than this amount for the purpose of paying the salary of the veterinary surgeon, he would have violated the direct constitutional prohibition of section 9, art. 11, which says: "No warrant shall be drawn upon the state treasurer except in pursuance of an appropriation for the specific purpose first made." At the time the demand was made for the allowance and payment of the claim alleged, the legislature had set aside and appropriated only the sum of $1,200 with which to pay the salary. When this sum was exhausted, the state auditor could not draw his warrant for more. Then, so far as the action of the state auditor is concerned, it was eminently proper and right.

But this does not dispose of the main question in the case, viz., the obligation, if any exists, of the state to pay the amount claimed. The appointment of the plaintiff was made by a territorial gov-

ernor, and his qualification and duties were prescribed by a territorial law. The object of the law under which this appointment was made was to prevent, so far as possible, the spread of contagious and infectious diseases among the cattle, horses, mules, and other animals of the territory of Dakota. It is within our judicial knowledge that the territory, as it existed at the time of the enactment of this law, embraced nearly, if not quite, twice as much area as the present state of South Dakota, out of which territory this state was created. The duties imposed upon the veterinary surgeon at the time of his appointment were double what they were after the state was organized, there being but one veterinary surgeon for the territory of Dakota. When the territory was divided and organized into two states, plaintiff became a citizen of South Dakota, and ineligible to hold or exercise the duties of an office of this nature outside the limits of that state. The enabling act of congress, by which the territory of Dakota was divided, and the two states of North and South Dakota were created and organized, declared that "all laws in force made by said territory, at the time of admission into the Union, shall be in force in said states, except as modified or changed by this act, or by the constitutions of the states, respectively." The territorial enactment under which the plaintiff was appointed was not modified, changed, or nullified by either the act of congress or the constitution of this state, and remained and was in force, so far as its general features were concerned, after the creation of this state. The state government became operative November 2, 1889. The terms of all appointive territorial officers expired on that day, except such as were saved by section 4, art. 26, of the schedule to the constitution. That the machinery of the state government might not become inoperative, many officers of the old territory were by the above section allowed to remain in office. When the duties and labors were ostensibly the same as under the territorial form of government, it was not unjust that such officers should be allowed the same compensation for their services as provided for in the territorial law. But in cases where the incumbent of a territorial office, under a territorial law, was required to perform the duties over the whole territory of Dakota, as it existed before the divi-

sion, and he acted in the same office, when the duties and labor were greatly reduced and lessened, after division, this reason or principle could not prevail. The law-makers in the enactment of this law, and in fixing the compensation for the services of the officer under it, no doubt had in view, among other things, the great extent of the territorial area over which the duties should be performed, the amount of labor requisite, the number of cattle, horses, etc., it might be necessary to inspect, and time expended in the faithful discharge of the duties of the office. This, at the time and under the condition of things as they existed, was thought to be worth $2,500; but, when the territory was divided into nearly equal parts, it would be inequitable and unjust to hold that the officer was entitled to the same compensation as before. But the contention of the plaintiff is that, under the law of his appointment, the term of his office was two years, and that by reason of this the legislature of the state had no power, under the constitution of the state, to diminish his salary or compensation during that period. The plaintiff's complaint states he was appointed to the office of veterinary surgeon on the 3d day of June, 1889. At the time of such appointment there was a territorial statute in full force and effect, which is as follows: "That hereafter the terms of office of all territorial officers * * * whose offices are created by the laws of this territory, and filled by appointment of the governor, with or without the advice and consent of the legislative council, shall expire at the end of ten days after the expiration of the term of office of the governor by whom such appointments were made." Section 1, c. 101, Sess. Laws Dak. T. 1889. This chapter contains a clause expressly repealing "all acts, and parts of acts, conflicting with these provisions." The complaint shows that the plaintiff was holding an office created by the laws of the territory of Dakota, and that his appointment was made by the governor of the territory since the passage and adoption of the law regulating the term of his office and repealing that portion of the law of 1877 which fixed the term of his office at two years. As we have said, *supra*, the territorial form of government went out of existence, and a state government legally took its place, on the 2d day of November, 1889. On that day the term of the territo-

rial governor expired, and 10 days thereafter the office of the
plaintiff became vacant, except as he was permitted to continue
to hold and exercise the duties of it under section 4, art. 26, of the
schedule of the constitution. The appointment and acceptance
of the office by the plaintiff, under the provisions of statute in
force at the time, and the continuance of the same under the con-
stitution's provisions, left his office without any fixed term, and
does not come within the prohibition of that clause in section 3,
art. 12, of the constitution, which declares that "the compensa-
tion of any public officer shall not be increased or diminished
during his term of office."

The legislature of the state could, therefore, without the viola-
tion of any legal or moral obligation, reduce the compensation of
the veterinary surgeon. The question, then, is, has it done so? It
is contended on the part of the state that by the appropriation
act approved March 10, 1890, which covers the period for which the
plaintiff claims compensation, the legislature expressed its pur-
pose to reduce the price paid for the services of the veterinary sur-
geon from $2,500 to $1,200 per annum. We think this contention
well founded. The law fixing the compensation for the services
of the veterinary surgeon was passed by the territorial legislature
under the circumstances as detailed above. That enactment also
provided that the veterinary surgeon should also receive "his neces-
sary traveling expenses actually paid out in the performance of
his duty," without regard to the amount of them. The appropria-
tion act of the first state legislature specifically appropriated for
the pay of the veterinary surgeon the sum of $1,200 as salary, and
the sum of $500 for expenses. This enactment, we think, reveals
a design upon the part of the state legislature to reduce the com-
pensation of the veterinary surgeon to $1,200, and to establish a
fixed amount that should cover the expenses of his office. The
purpose to suspend the law fixing the compensation is just as clear
as its purpose is to limit or establish the amount to be paid for the
expenses of his office. There are certain well-known rules for in-
terpreting a legislative enactment, one of which is that it should
be interpreted according to the intention of the legislature appar-
ent upon its face; another, that, when two acts are in irreconcila-

ble conflict, the latter repeals the earlier act, even though there are no express repealing words. The leaning of the courts, we know, is against repeals by implication, and, if it be possible to reconcile two statutes, one will not be held to repeal the other. McCool v. Smith, 1 Black, 459; U. S. v. Tynen, 11 Wall. 88. But Judge FIELD, speaking for the court in the case of U. S. v. Tynen, above cited, said: "It is when the later act plainly shows that it was intended as a substitute for the former act that it will operate as a repeal of that act." Chief Justice WAITE, in the case of King v. Cornell, 106 U. S. 395, 1 Sup. Ct. Rep. 312, said: "While repeals by implication are not favored, it is well settled that, when two acts are not in all respects repugnant, if the latter act covers the whole subject of the earlier, and embraces new provisions which plainly show that the last was intended as a substitute for the first, it will operate as a repeal." See, also, Murdock v. City of Memphis, 20 Wall. 590. The result of the authorities cited, as of many more that could be, is that, when a statute contains no expression of a purpose to repeal a former law, it does not repeal it unless the two acts are in irreconcilable conflict, or unless the later statute covers the whole ground occupied by the earlier on the subject-matter claimed to be repealed.

Guided by these rules, we are to settle the question before us. There is no express repeal of the provision of section 2333, Comp. Laws, in relation to the pay for services of the veterinary surgeon, declared in the appropriation act of March 10, 1890, but the later act does declare that "all acts and parts of acts in conflict with the provisions of this act are hereby repealed." Now, between the section of the act which fixes the amount that may be paid the veterinary surgeon and the unlimited amount allowed him for traveling expenses, and the amount designated as his salary and the fixed amount for the expenses of his office in the appropriation act of March 10, 1890, there is a clear repugnancy. The first act makes the compensation $2,500. The second provides for the payment of but $1,200 for these services. The first act says the veterinary surgeon shall be allowed all his actual and necessary expenses for traveling. The second provides that $500 only shall be paid for the expenses of the office. When repugnant provisions

like these exist in two acts the later is held, according to all authorities, to operate as a repeal of the first act, for the later act expresses the will of the government in the premises. Justice FIELD, in the case of U. S. v. Tynen, 11 Wall. 91, has clearly and tersely collated the leading cases on this question, which sustain the position we have taken, but we have other and later cases more directly in point. The case of U. S. v. Mitchell was an appeal from the court of claims, reported in 109 U. S. 146, 3 Sup. Ct. Rep. 151. Mitchell brought his suit to recover an alleged balance of salary claimed to be due him as an Indian interpreter at the Santee agency, in the state of Nebraska, under section 2070, tit. 23, Rev. St. That section provided that the salaries of interpreters lawfully employed in the service of the United States in certain states and territories should be $500 a year each, and of certain other ones $400. Section 2076 of the same law provides that the several compensations should be in full of all emoluments and allowances whatsoever. Afterwards, in 1877, congress, in its appropriation act, specifically appropriated for the pay of Indian interpreters the uniform sum of $300 each, and so continued from year to year to make this appropriation for the payment of the salaries of Indian interpreters. Mitchell contended that this was not a repeal of the law which expressly gave them $500, and therefore he was entitled to the balance of that sum. The court of claims held that his contention was correct, and gave him judgment accordingly. The United States, however, appealed to the supreme court, and, after considering the case, Justice WOOD in delivering the opinion of the court, said: "We find, therefore, this state of legislation: By the Revised Statutes, the salaries of interpreters were fixed, some at $400 and some at $500 per annum, with a provision that such compensation should be in full of all emoluments and allowances whatsoever. By the acts in force during appellee's term of service the appropriation for the annual pay of interpreters was $300 each, and a large sum was set apart for their additional compensation. This course of legislation, which was persisted in for five years, distinctly reveals a change in the policy of congress on the subject, namely, that instead of establishing a salary for interpreters at a fixed amount, and cut-

ting off all other allowances, congress intended to reduce the salaries, and place a fund at the disposal of the secretary of the interior, from which, at his discretion, additional emoluments and allowances might be given to interpreters. The purpose of congress to suspend the law fixing the salaries of interpreters in Nebraska at $400 per annum is just as clear as its purpose to suspend the section forbidding any further emoluments and allowances. Our opinion is therefore that the intention of congress to fix by the appropriation acts, to which we have called attention, the annual salaries of interpreters for the time covered by these acts at $300 each, is plain upon the face of the statute.  *  *  *
This purpose is, of course, irreconcilable with the provisions of the Revised Statutes on the same subject, and these provisions must be considered as having been suspended until finally repealed.
*  *  *  As the appellee has been paid in full his salary as fixed by the later acts, which were in force before and during, and continued in force after, his term of service, he has no cause of action against the United States." The case of U. S. v. Fisher, 109 U. S. 143, 3 Sup. Ct. Rep. 154, was also an appeal from the court of claims. The appellee, Fisher, held the office of chief justice of the territory of Wyoming from 1876 to 1879. Up to June 30, 1877, he was paid his salary at the rate of $3,000 per annum. From June, 1877, to November, 1879, he was paid at the rate of $2,600. The appellee contended that he was entitled to his salary of $3,000 for the whole term of service. The act of congress regulating the salaries of chief justices and associate justices in the territories provides that their salary shall be $3,000 each per annum. This statute remained in force until March 3, 1877, when congress passed an act entitled "An act making appropriations for the legislative, executive, and judicial expenses of the government for the year ending June 30, 1878, and for other purposes." That act declared as follows: "That the following sums be, and the same are hereby, appropriated out of any money in the treasury not otherwise appropriated, in full compensation for the services of the fiscal year ending June 30, 1878, for the objects hereinafter expressed.  *  *  *  Territory of Wyoming: For salaries of governor, chief justice, and two associate justices, at two thousand

six hundred dollars each." The acts of 1878 and 1879 contained similar provisions. Upon this state of the statute law the question is presented whether from June 30, 1877, up to and including November 26, 1879, the appellee was entitled to a salary at the rate of $3,000 per annum, or at the rate of $2,600. The appellee contended, as does the plaintiff in the case at bar, that he was entitled to the salary as fixed by the statute, instead of the amount named in the appropriation act. The supreme court of the United States, speaking by Mr. Justice Woods, says: "We cannot concur in this view. * * * We think that the appropriation acts above referred to, so far as they concern the question in hand, are susceptible of but one meaning. Placing side by side the two claims of the statute which relate to this controversy, their plain effect is to appropriate $2,600 for the salary of the appellee for one year, and to declare that the sum so appropriated shall be in full compensation for his services as chief justice for the year specified. * * * Not only do the words of the statute make the intention of congress manifest, but that intention is plainly repugnant to the former statute, which fixes the yearly salary of the chief justice at $3,000. It is impossible that both acts should stand. No ingenuity can reconcile them. The later act must therefore prevail, and the earlier act must, for the time covered by the appropriation acts above referred to, be considered as suspended." The case of People v. Board of Sup'rs, 105 N. Y. 182, 11 N. E. Rep. 391, was where the relator was appointed chief clerk to the district attorney of Kings county, and served as such from January, 1878, to 1881, during which period he received as a salary $1,500, according to a stipulation made between him and the district attorney. In January, 1884, the relator presented to the board of supervisors a claim for more than $14,000, being the difference between the sum which he had received for salary and a salary at the rate of $5,000, which he claimed to be entitled to by law for the time which he served. The claim was rejected, and the relator sued out an alternative writ of *mandamus* to compel the board of supervisors to audit and allow the sum claimed. The issues were tried at a special term, and the court rendered judgment dismissing the writ. This was appealed from to the general term, and

the judgment of the special term was affirmed. 38 Hun, 373. The judgment was carried to the court of appeals, and again affirmed, the court saying: "The ground of the relator's claim is that his salary as chief clerk in the district attorney's office is fixed by law, and that consequently the district attorney who appointed him had no power to stipulate for a reduced compensation. * * * . It is conceded that the power to fix the compensation of the district attorney, and his assistants, clerk, and officers, was vested by statute in the board of supervisors. The claim of the relator is that his salary was fixed by a resolution of the board of supervisors of the county of Kings, before the election of the district attorney. That resolution fixed .* * * the salary or pay of the chief clerk in this resolution at $3,000 per annum. But on the 8th of November, 1877, the board of supervisors, by resolution, determined to raise by taxation, and included in the budget for the then current fiscal year, for the salaries of the district attorney, and his assistants, clerks, and officers, only the sum of $22,000, which was considerably less than the aggregate of the salaries or pay of these officers as fixed by the resolution of August 7, 1877. Although the last-mentioned resolution was not in terms repealed or amended, we think that the action of the board on the 8th of November plainly indicated an intention on its part to reduce the salaries to be paid in the district attorney's office to an aggregate amount, which would be within the sum provided for in the tax budget, and that it was within their power to do so, as they had full authority to regulate the salaries of the persons thereafter to be employed in that office." This opinion is only cited to emphasize the position that a former legislative act may, by subsequent indirect enactments, be repealed, although not so expressly stated. The cases above reviewed we think fully sustain the view we have taken, that the state legislature clearly intended, by the appropriation made for the salary of veterinary surgeon, and fixing a definite sum for the expenses of that office, in the act of March 10, 1890, to reduce the salary of that officer to $1,200; and he, having been paid that amount while he continued in the office, has no cause of action against the state. The demurrer is sustained, and the complaint dismissed, with costs. All the judges concur.