STATE *ex rel* M. J. EDGERLY *vs.* ARCHIE CURRIE, JR.

Opinion filed May 31st, 1893.

**Statutes—Repeal by Implication.**

> Sections 82, 84 of the constitution of this state are considered in connection with Ch's 122, 123, 125, 126, 128, 187, 188, and Ch's 9 and 10 of the Laws of 1890, and Ch. 9 of the Laws of 1891; and, *held*, that said constitutional provisos, and said statutes of the state, are in conflict with, and repugnant to, § 27 of Ch. 110, Laws 1889, and hence said § 27 was never in force in this state.

**Clerk of Railroad Commissioners—Compensation.**

> The state auditor has no authority, under existing laws, to issue warrants on the state treasurer to pay the salary of the clerk or secretary of the commissioners of railroads upon a basis of $1,500 per annum, as fixed by § 27, Ch. 110, Laws 1889. Accordingly, *held*, that the state auditor lawfully refused to issue such warrants to the relator, who held the position of secretary from January 4th, 1891, until the end of January, 1892. The salary annexed to said position is $1,000 per annum.

Appeal from District Court, Burleigh County; *Winchester*, J.

Mandamus proceeding. Defendant appeals from a final order of the District Court of Burleigh County, (*W. H. Winchester*, J.,) which order directs the defendant to issue warrants for relator's official salary, as secretary of the commissioners of railroads, at the rate of $1,500 per annum.

Reversed.

*W. H. Standish, Atty. Gen.*, for appellant.
*M. J. Edgerly*, for respondent.

WALLIN, J. The relator was appointed secretary of the commissioners of railroads on February 4th, 1891, and served in that capacity from said date until the end of January, 1892. The relator claims that the salary allowed by law to such secretary is $1,500 per annum, and has, upon that assumption, made out, in due form, his monthly accounts for salary during said period, and has from time to time presented the same to the respondent, as state auditor, and demanded warrants upon the state treasurer

for such amounts. The auditor has refused, and still refuses to issue warrants to the relator upon the basis of a salary of $1,500. The court below directed the defendant to issue the warrants as demanded. The facts are conceded, and the sole question presented for the determination of the court is whether relator's salary is, or is not, $1,500 a year. If it is that amount, the order appealed from must be affirmed; otherwise, it must be reversed. The solution of the question must turn upon the construction to be given to certain constitutional provisions and statutes which bear upon the subject matter.

Chapter 110 of the Laws of 1889 embraces an act of the legislature of the Territory of Dakota, which act amends an act of 1885, entitled "An act to provide for the establishment of a board of railroad commissioners, defining their duties," etc. Both acts authorized the governor of the Territory, by and with the advice and consent of the council, to appoint three persons biennially, to be "and constitute a board of railroad commissioners." Section 6 of the act of 1885 was re-enacted without change, and constituted § 27, Ch. 110, Laws 1889. Said section is as follows: "The said commissioners shall hold their office at such place as they shall determine. They shall each receive a salary of $2,000, to be paid as the salaries of the other territorial officers are paid, and shall be provided, at the expense of the territory, with necessary office furniture and stationery; and they shall have authority to appoint a secretary who shall receive a salary $1,500 per annum." This section is explicit, and under it the territorial board of railroad commissioners "had authority to appoint a secretary," and when appointed the secretary's salary was $1,500 a year. This section was in force when the state constitution went into effect, in the year 1889; and it becomes necessary to inquire whether it was in force during the time when the relator was in office, because it is not claimed that any statute has been passed by the state legislature, in terms, creating the office of secretary of the "commissioners of railroads." The relator's claim is that such office has been recognized by state legislation, and that no state enactment is in

conflict with the provisions of § 27, relating to the appointment and salary of a secretary, and hence that the same are in force. If the position of secretary of the commissioners of railroads is, under § 27, a distinct state office, and one which exists separately and apart from the position of a clerk of the commissioners of railroads, it would be the duty of the state auditor, under the annual appropriation act, approved February 27th, 1891, (Ch. 10, Laws 1891,) to issue the warrants demanded by the relator as the incumbent of such office. That the relator was appointed to the office of secretary by the commissioners of railroads is not questioned.

Turning to the state law we find that § 82 of the constitution provides "there shall be chosen by the qualified electors of the state * * * three commissioners of railroads. * * * They shall severally hold their offices at the seat of government for the term of two years, and until their successors are elected and duly qualified." Section 83 provides: "The powers and duties of the commissioners of railroads shall be as prescribed by law." Section 84 fixes the annual salary of such commissioners at $2,000. The state constitution contains no further provisions relating to commissioners of railroads, and, as has been seen, it confers upon them no powers or duties, but, on the contrary, declares that their powers and duties "shall be as prescribed by law." The legislature of the state, at its first session, enacted a great number and variety of statutes defining the powers and prescribing the duties of the "commissioners of railroads;" but, so far as we can see, no statute of the state has ever created, in terms, the office of secretary of the commissioners of railroads, or authorized such commissioners, or any one else, to appoint an officer of that name. See Ch's 122, 123, 125, 126, 128, 187, 189, Laws 1890. Upon this state of facts the question arises, under the law, whether there is, independent of clerkships, an office of "secretary" of the commissioners of railroads in the State of North Dakota. If the law has not created such an office it will be conceded that the commissioners could not do so by the mere act of appointing the relator

to such an office; much less would such appointment operate to authorize the state auditor to draw warrants on the treasurer, as and for the salary of such secretary, at the rate of $1,500 per annum. No money can be drawn from the state treasury without authority of law. If there is any law which will justify paying the relator a salary of $1,500 per annum, it is conceded that it must be found in § 27, of the act of 1889, which we have quoted above, and which, the relator contends, is still in force.

The attorney general cites Ch's 9 and 10 of the Laws of 1890 to show that § 27, *supra*, has been repealed by necessary implication, if not in terms. Chapter 9 is entitled "An Act to Provide Clerk Hire for the Various State Officers, and Making Appropriation Therefor." Chapter 10 is an amendment of Ch. 9. Section 1 of Ch. 9, as amended, provides: "The following amounts are hereby fixed and allowed for clerk hire of the several state officers hereafter mentioned," etc. Section 1 then goes on to provide clerk hire for the governor's office, and all other state offices, and concludes in the following language: "Commissioners of railroads, one thousand dollars per annum." The proviso of § 1 is as follows: "Provided, that all clerical appointments shall first be referred to the governor for his approval." Section 2 provides for a continuing annual appropriation for such clerk hire. Section 3—the emergency section—declares, as a reason why the act should go into immediate effect, that there was then existing "no provision by law for the payment of any clerk hire for the several state officers." A summary of these statutory provisions will show: *First*, That the state legislature, at its first session, after clothing the commissioners, then newly elected by the people, with extensive powers, some of which were of a nature to require the services of a clerical assistant, authorized the said commissioners, with the approval of the governor, to appoint a clerk to serve the commissioners. *Second*, The legislature provided a continuing annual salary for the clerk so to be appointed. *Third*, The legislature itself declared, in effect, in the emergency clause of the statute, that there was, when the act was passed, no other

existing law which authorized the commissioners to appoint a person to perform their clerical work. Section 4 reads: "All acts and parts of acts in conflict with the provisions of this act are hereby repealed." We are convinced, after careful consideration, that the state constitution, which creates three commissioners of railroads to be chosen by popular vote, when read in connection with the comprehensive body of statutes enacted at the first session of the state legislature, covering all of the ground embraced in the territorial laws upon the same subjects, must be held to have effected a total abrogation of all territorial statutes which created a board of railroad commissioners, and defined their powers and duties, including the power to appoint a secretary of the board. The creation of the constitutional officers to be elected by the voters necessarily implies the abolition of the board appointed by the governor, as the two sets of officers, in the same sphere of duty, could not co-exist, and exercise their powers, without a clash in jurisdiction. All duties which, under territorial laws, were devolved upon the board, are now cast upon the commissioners of railroads, by statutes passed since statehood, except only the duty of appointing an officer who was described in the territorial statute as a secretary, which officer was to be appointed by the board, without reference to the approval of the governor, whereas, under state law, the commissioners are empowered to appoint a clerk, but such appointment does not take effect until approved by the governor of the state. The feature of the approval of the governor, required by the state statutes of both 1890 and 1891, marks a clear departure from the old system, and indicates to our mind a purpose in the state legislature to abolish the old system of allowing the board to appoint a secretary without consulting the governor, and substituting therefor the plan of executive approval of such appointment. The two systems of filling the two clerical offices in question differ so radically that we are satisfied that the state legislature intended to wipe out the old method, and substitute another. We think the legislative intent was to cast the same clerical duties which,

under the territorial regime, were to be performed by an officer called a "secretary," upon a functionary who, under the state statutes, is denominated both "secretary" and "clerk." The terms "clerk" and "secretary," as applied to subordinate ministerial functionaries, are by popular usage, synonymous terms, and are frequently used interchangeably. This use is also strictly accurate, according to the accepted standards of the language. One definition of the term "secretary," as given in Webster's Dictionary, is: "A person employed to write orders, letters, dispatches, public or private papers, records, and the like; an official scribe, amanuensis, or writer." The same authority, under the word "clerk," says: "In some cases, 'clerk' is synonymous with 'secretary;'" also, that a clerk is "one who is employed to keep records and accounts; a scribe; a penman; an accountant; as the clerk of the court." A striking, as well as strictly pertinent, example of the interchangeable use of the terms "clerk" and "secretary," is found in the law we are considering. As we have seen, § 6, Ch. 126, Laws 1885, expressly authorized the board to appoint a secretary. A salary was provided for such secretary. But a careful perusal of the entire chapter will disclose the fact that not a single duty, clerical or otherwise, was devolved by the act upon any official of that name, while, on the contrary, one duty, at least, of a clerical nature, was expressly cast upon a subordinate of the board, who was, in terms, denominated a "clerk;" and no officer called a "clerk" was authorized to be appointed or employed, by the territorial statute. Section 3 of said Ch. 126 authorized the territorial board, under certain circumstances, to serve a written notice upon railroad corporations. The statute required the notice to be served by leaving a copy thereof, "certified by the commissioners' clerk, with any station agent." Unquestionably, such written notice could have been lawfully certified by the secretary of the board, not only because the board had no clerk, and was not authorized to appoint any functionary of that name, but for the further reason, as has been

shown, that the two words, "clerk" and "secretary" as applied to such a functionary, are used interchangeably.

Respondent's counsel cites the following excerpt from § 10, Ch. 122, Laws 1890, to show, quoting from his brief, that "it was evidently the intention of the legislature of the State of North Dakota, of the year 1890, that 'a clerk or clerks should be employed in the office of the secretary of the commissioners of railroads," viz:  "Said commissioners shall inform such railroad company, by a notice thereof, in writing, to be served as a summons in civil actions required to be served by the statutes of this state in actions against corporations, when certified by the clerk or secretary of the railroad commissioners." To our mind this statutory provision furnishes only another instance of the interchangeable use of the terms "clerk" and "secretary," as descriptive of a subordinate functionary, whose duties are ministerial and clerical in character.  We think both terms were used in the statute to more fully describe the subordinate functionary, whether called "clerk" or "secretary."  Section 1 of Ch. 9, Laws 1891, is also cited by respondent to show that there is such an officer as secretary of the commissioners of railroads.  If considered by itself, and wholly divorced from other features of the statute relating to the same matter, the section would possibly tend to support respondent's contention that there is a state officer called a "secretary of the commissioners," and that that officer has been allowed $1,000 per annum to disburse as clerk hire to his subordinates.  But this theory becomes untenable when we recall the fact that there never was a statute which, by any construction possible, conferred upon the secretary of the board, or upon any other person or board, the power to appoint a subordinate to render clerical assistance to the secretary or in the secretary's office.  We think that we have shown that the obvious purpose of the state laws, when considered together, is to annul the laws of the territory upon the same subject-matter, and to confer upon the commissioners of railroads chosen by the people new and additional powers, including that of appointing, with the approval

of the governor, a clerical assistant, whose salary is fixed at $1,000 a year, and who is referred to in the act of 1890 as a "clerk," and in the act of 1891 as "secretary."

It appears that the point in question has not before arisen in the state. The law in question, as practically construed by the several state auditors, has been held to be adverse to the relator's construction. Prior to the relator's appointment, and since the state was admitted, two persons has been appointed to the position held by the relator, viz: F. W. Fancher and Harvey Harris. Both were paid salaries at the rate of $1,000 a year. While it is true that the relator is not necessarily concluded by the uniform rulings of the several state auditors who have practically construed the law against the relator's theory, nor by the uniform acquiescence of his predecessors in office in such rulings, nevertheless it is true that the ruling of an executive officer upon a point where it is his sworn duty to act, especially where the rulings have been acquiesced in by those whose financial interests were involved, are always given considerable weight in the courts, and when the power is doubtful the uniform rulings in an executive office would be followed, and allowed to turn the scale. Cooley, Const. Lim. (3d Ed.) marg. pp. 69, 70. In the case at bar, however, we think there is a plain and necessary repugnancy between the territorial and state law upon the question involved, and of course the former must give way to the latter. The relator bases his claim wholly upon § 27 of the act of 1889. That section gave absolute authority to the territorial board to appoint a secretary, whose salary was fixed at $1,500 a year. No such authority has been conferred upon the state commissioners. The territorial board no longer exists. The abolition of that board by the repeal of the law which created it must be held to vacate all offices, and to cut off all official salaries, which came into existence by virtue of the law which is repealed. Mechem, Pub. Off. § § 407, 408. We must therefore hold that § 27, Ch. 110, Laws 1889, is repugnant to both the constitution and laws of the State of North Dakota, and especially repugnant to the acts

embraced in Ch's 9 and 10, Laws 1890, and Ch. 9, Laws 1891. Where the salary of an officer is not fixed by the terms of the constitution, it is well settled, where an act of the legislature appropriates a sum as salary which is less in amount than the salary allowed the same officer by the statute which created the office, that the two statutes are repugnant, and the former must give way to the latter, even though the latter enactment contains no repealing words. *Collins* v. *State*, (S. D.) 51 N. W. 776, and cases cited. These authorities are not in point in the case at bar until the conclusion is first reached—and we have reached that conclusion—that all of the enactments in question which touch the matter of a "clerk" or "secretary" of the commissioners are to be construed as referring to one and the same subordinate functionary of the commissioners of railroads, whose duties are ministerial, purely, and of a clerical nature. Chief Justice Waite, in the case of *King* v. *Cornell*, 106 U. S. 395, 1 Sup. Ct. Rep. 312, said: "While repeals by implication are not favored, it is well settled that when two acts are not in all respects repugnant, if the later act covers the whole subject of the earlier, and embraces new provisions, which plainly show that the last is intended as a substitute for the first, it will operate as a repeal."

We deem further comment unnecessary. From what has been said it follows that no law of the state will allow the state auditor to issue warrants on the state treasurer to the relator as and for salary at the rate of $1,500. The relator, whether as the secretary or clerk of the commissioners of railroads, is lawfully entitled to a salary of $1,000 per annum, and no more. The order appealed from must therefore be reversed, and such will be the order of this court. All concur.