STATE OF NORTH DAKOTA, EX REL. JOHN GAMMONS, Respondent, v. A. G. SORLIE, John Steen, Robert Byrne, C. A. Fisher, and Gilbert Semingson, as the State Auditing Board of the State of North Dakota, Appellants.

(219 N. W. 105.)

**Statutes — construction of statutes by court — how governed.**
   1. In construing a statute of doubtful meaning the courts will give weight to the practical construction placed thereon by those charged with the duty of executing and applying it. This rule is especially applicable when the construction has long prevailed, and the practical construction of the officer or department has received the implied approval of the legislature.

Note.— (1) On the general rule governing executive or departmental construction of statutes, see 25 R. C. L. 1043; 4 R. C. L. Supp. 1617; 5 R. C. L. Supp. 1361.
   (2) General repealing clause as repealing inconsistent parts of earlier statutes, see 25 R. C. L. 912; 3 R. C. L. Supp. 1434; 4 R. C. L. Supp. 1606; 7 R. C. L. Supp. 1352; 7 R. C. L. Supp. 855.

**Statutes — repealing clauses — what is repealed.**

2. A general repeal clause purporting to repeal all acts or parts of acts in conflict with the act containing such provision, in legal effect, adds nothing to the repealing force of the statute of which it is a part; and operates merely to repeal those acts on the same subject, or parts of such acts, as are clearly in conflict with the new act and then only to the extent of the conflicting provisions.

**Statutes — appropriation in statute creating Industrial Commission not repealed by general repealing clauses in other statutes.**

3. In this case it is held that the appropriation made in the act creating the Industrial Commission of North Dakota (Laws 1919, chap. 151), did not lapse at the expiration of the biennium; but was intended by the legislature to be a continuing appropriation, available for the use of the Industrial Commission in carrying out the purposes of the act until the appropriation had been fully expended or repealed; and that such appropriation was not repealed by general repeal clauses in the general appropriation bills of 1921 and 1923.

**Statutes — construing particular term, reference had to meaning of words associated with it.**

4. In determining the meaning of a particular term in a statute reference will be had to the meaning of the words with which it is associated.

**Statutes — in construing statutes, all acts relating to same subject will be read in connection therewith.**

5. In the construction of a particular statute or any of its provisions, all acts relating to the same subject or having the same general purpose will be read in connection with it. This rule applies with peculiar force to statutes passed at the same session of the legislature.

**Industrial Commission Act — held not to require governor's approval for all bills for commission's expenses or confer power on him to disallow bills.**

6. The requirement of § 4, chap. 151, Laws 1919, that "all orders, rules, regulations, by-laws and written contracts adopted or authorized by the Industrial Commission shall, before becoming effective, be approved by the Governor as chairman and shall not be in force unless approved and signed by him," does not indicate a legislative intention to impose upon the Governor the duty of personally approving all bills for administrative expenses of the commission; or to confer upon him the absolute power to disallow such bills.

Opinion filed April 9, 1928.

Statutes, 36 Cyc. p. 855 n. 68; p. 894 n. 29; p. 1097 n. 44; p. 1098 n. 46; p. 1118 n. 25; p. 1140 n. 64; p. 1141 n. 66; p. 1147 n. 30; p. 1151 n. 47.

Appeal from the District Court of Burleigh County, *Jansonius, J.*
Defendants appeal from a judgment in a mandamus proceeding.
Affirmed.

*Langer & Nuchols,* for appellants.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Special Assistant Attorney General, for respondent.

PER CURIAM.    This is a mandamus proceeding instituted in the district court of Burleigh county against the members of the State Auditing Board.    The relator, Gammons, is secretary of the State Industrial Commission and he brought the proceeding to compel the state auditing board to audit and allow his claim for salary as secretary of the State Industrial Commission for the month of July 1927.    The trial court rendered judgment in favor of the plaintiff, and the respondents have appealed.    The questions presented involve the construction of certain statutory provisions.

In 1919 the legislative assembly created the Industrial Commission of North Dakota "to conduct and manage on behalf of the State, certain utilities, industries, enterprises and business projects."    Laws 1919, chap. 151.

The act provided:

"Sec. 2. The Industrial Commission shall consist of three members, namely:    The Governor, the Attorney General and the Commissioner of Agriculture and Labor, of the State of North Dakota.    Two members shall constitute a quorum for the transaction of business.    .   .   .

"Sec. 3. The Governor shall be the Chairman of the Industrial Commission, and its attorney shall be the Attorney General of the State.    In the transaction of its general business it may employ secretaries and other subordinate officers, clerks and agents, on such terms as it may deem proper, appointing and discharging all persons so engaged when and as, in its judgment, the public interests may require.    The Commission may require suitable bonds of any such secretary or other subordinate officer, clerk or agent, and shall fix the amount of the compensation of each.    Such compensation, together with other expenditures for operation and maintenance of the general business of the Commission, shall remain within the appropriation available in each year for such purpose.

"Sec. 4. The Industrial Commission shall adopt and procure an official seal, and may authenticate therewith its documentary acts. All orders, rules, regulations, by-laws, and written contracts, adopted or authorized by the Commission shall, before becoming effective, be approved by the Governor, as Chairman, and shall not be in force unless approved and signed by him.

"Sec. 5. The Industrial Commission is hereby empowered and directed to manage, operate, control and govern all utilities, industries, enterprises and business projects, now or hereafter established, owned, undertaken, administered, or operated by the State of North Dakota, except those carried on in penal, charitable or educational institutions. To that end it shall have the power, the exercise of its sound judgment, and is hereby directed: . . .

"(d) To remove and discharge any and all persons appointed in the exercise of the powers granted by this Act, whether by the commission or by any manager of any utility, industry, enterprise or business project; and any such removal may be made whenever in the judgment of the Commission the public interests require it; provided however, that all appointments and removals contemplated by this Act shall be so made as the Commission shall deem most fit to promote the efficiency of the public service. . . .

"(f) To make rules, regulations, orders and by-laws for the management and operation, and for the transaction of the business, of such utilities, industries, enterprises, and business projects. . . .

"Sec. 6. The Industrial Commission shall prepare an annual report and file it in the office of the Secretary of State not later than the first day of February of each year. The report shall contain an itemized account of its expenditures and a complete and detailed financial statement of each utility, industry, enterprise and business project under its control, showing fully all items of income and disbursements and liabilities of every nature for the calendar year ending December 31st next preceding. The report shall also set forth a list of all persons in the employ of the commission, with the name of each person drawing a salary under its authority, the amount of the salary and all other emoluments received, and the fund from which drawn.

"Sec. 7. There is hereby appropriated out of the general funds of the state, not otherwise appropriated, two hundred thousand dollars, or

so much thereof as may be necessary, to carry out the provisions of this act. This appropriation is hereby made available immediately upon the passage and approval of this act."

The Industrial Commission was organized in 1919, and a secretary appointed; and from that time until this controversy arose the Industrial Commission has had a secretary. The relator was appointed secretary and entered upon his duties as such on or about July 16, 1923 and has since that time remained an incumbent of the office and discharged the duties thereof. But it is the claim of the defendants (except the defendant, John Steen, state auditor) that there is no work for a secretary of the Industrial Commission and that the Governor notified the relator that his salary as secretary of the Industrial Commission would cease after July 1, 1927, and that after that date the state examiner would act as secretary of the commission without compensation. The record shows that the claim that the state examiner had been appointed secretary of the commission was withdrawn in the district court, and the question is not presented or argued in appellant's brief on this appeal. On the oral argument it was expressly conceded by appellants' counsel that the attempt by the Governor to appoint the State Examiner secretary of the Industrial Commission was wholly ineffectual. It is conceded that no action has ever been taken by the Industrial Commission removing or discharging the relator as secretary of the Commission. His voucher for salary for the month of July, 1927, while not approved by the Governor, was approved by the other two members of the Industrial Commission. On this appeal therefore no question is presented as to the right of the relator to discharge the duties of the office of secretary of the Industrial Commission or his right to compensation therefor, provided funds are available out of which the compensation may be paid and his claim for compensation has been duly approved by the officers ·charged with the duty of approving the same.

In the general appropriation bill enacted by the legislative assembly at the regular legislative session in 1927 there was appropriated for the Industrial Commission for the biennium commencing July 1, 1927 and ending June 30, 1929 the sum of $11,250, of which $5,600 was designated as salary of the secretary. The Governor vetoed this item. Laws 1927, pp. 19, 20.

The respondents claim that because of such veto no appropriation is available for the purpose of paying the salary of the relator as secretary of the Industrial Commission for the month of July, 1927. The relator, however, counters with the argument that although the Governor vetoed the appropriation for the salary of the secretary of the Industrial Commission made by the legislative assembly in 1927 there still remains of the $200,000 appropriation made in § 7 of the Act of 1919, a balance of $13,128.81 and that this is available for the payment of relator's salary.

The appellants contend that the action of the state auditing board in rejecting the claim of the relator for salary as secretary of the Industrial Commission for the month of July, 1927 was correct for the following reasons:

(1) That there was no appropriation from which the salary of the relator could be legally paid; that the appropriation of $200,000 contained in chapter 151, Laws 1919, lapsed and became unavailable on and after July 1, 1921;

(2) That if such appropriation did not lapse by operation of law, that it was repealed by the general appropriation acts of 1921 and 1923;

(3) That if the unexpended balance of the $200,000 appropriation is still available for the payment of relator's salary, such salary can be paid only upon the order of the Governor.

These propositions will be considered in the order stated.

(1) In the act creating the Industrial Commission there was a specific appropriation,—a setting apart of $200,000 out of the public revenue,—to be utilized by the Industrial Commission to carry out the purposes of the act. There is no indication that there was any legislative intention to limit this appropriation to the biennial period; and the practical construction of those charged with administering the law has been to the effect that the appropriation was a continuing one—available until expended or repealed. At the expiration of the biennial period in 1921 the then state treasurer submitted to the attorney general for his opinion and advice the question whether the appropriation in chapter 151, Laws 1919, should be canceled or carried forward into the new fiscal year and used until exhausted. And the then attorney general advised the state treasurer that there was nothing in the act

tending to show any intent that the appropriation should be limited "to the biennial period;" and that the unexpended balance might "be carried forward into the new biennium and used until exhausted." See biennial report of the attorney general, 1921–1922, p. 36.

In 1921 the seventeenth legislative assembly, in the general appropriation bill, appropriated for the use of the Industrial Commission the sum of $25,000 for various purposes including "salary and clerk hire." This appropriation was not used, but was permitted to lapse and was cancelled at the expiration of the biennium; and all expenses incident to the operation of the Industrial Commission, including the salary of the secretary, from July 1, 1921 to June 30, 1923, was paid out of the appropriation made in the act of 1919.

In the general appropriation bill of 1923 the legislature also made an appropriation for the Industrial Commission aggregating in all $12,890. Both the general appropriation bill enacted in 1921 and that enacted in 1923 contained a specific repeal of certain statutory provisions providing for a mill tax for the support of the various educational institutions of the state; and a general clause repealing "all acts and parts of acts that may be in conflict herewith for the periods of time herein specified." Some time after July 16, 1923, the secretary of the Industrial Commission asked the attorney general for an opinion whether the unexpended balance remaining July 1, 1923, from the appropriation made in chapter 151, Session Laws 1919, was available for the payment of current as well as prior expenses of the Industrial Commission. The attorney general in an opinion dated August 15, 1923, ruled that the appropriation was so available; that the act of 1919 evidenced a legislative intention that the appropriation therein made should not be limited to the biennium and that the general repeal clauses in the general appropriation acts of 1921 and 1923 did not operate as a repeal of section 7, chapter 151, Laws 1919. The concluding paragraph of the attorney general's opinion was as follows:

"It is therefore, our opinion that the $200,000 appropriated by chapter 251, Session Laws 1919, is available for the payment of current as well as prior expenses of the Industrial Commission and remains in full force and effect until the purposes of said chapter have been fulfilled or such appropriation specifically repealed." See p. 39, report of the Attorney General, July 1, 1922 to July 1, 1924.

According to the showing made before the trial court the various state officers since July 1, 1921, including every member of the present Industrial Commission and state auditing board have treated the appropriation contained in the act of 1919 as available for the payment of current bills of the commission. And, as was said by the trial court in his memorandum decision in this case, if the appropriation contained in the act of 1919 lapsed June 30, 1921 or was repealed by the general repeal clauses in the general appropriation acts of 1921 and 1923, then "it would appear that a very large part of this fund was illegally drawn, since less than $15,000 was drawn on this fund in 1919 and 1920; the rest of the $200,000, except the $13,117.58 still remaining, being drawn between January 1, 1921 and June 30, 1927.".

Where the meaning of a statute is doubtful, the construction placed upon it by the officers charged with the administration thereof is entitled to considerable weight; and this is especially so if it is apparent that the members of the state legislature in dealing with the subject must have been aware of the construction which had been placed upon the statute by those administering it and failed to indicate any disapproval of such construction. State ex rel. Kinzer v. Hall, 50 N. D. 708, 714, 197 N. W. 770; 25 R. C. L. pp. 1043–1045.

It must be assumed that the different legislative assemblies were familiar with the former legislation, and the construction that had been placed upon the appropriation contained in the Act of 1919 by the officers whose duty it had been to interpret the law in the administration thereof. And presumptively the different legislative assemblies in the enactment of the general appropriation bills considered that the unexpended balance of the appropriation made in the original act was at all times available for the use of the Industrial Commission in carrying out the purposes of the act. "An appropriation in the sense that that word is used in our Constitution is the setting apart from the public revenue of a definite sum of money for the specified object, in such manner that the officials of the government are authorized to use the amount so set apart, and no more, for that object." State ex rel. McDonald v. Holmes, 19 N. D. 286, 123 N. W. 884; State ex rel. Birdzell v. Jorgensen, 25 N. D. 539, 557, 49 L.R.A.(N.S.) 67, 142 N. W. 450.

In this case there was a specific setting apart of the sum of $200,000

for the use of the Industrial Commission in carrying out the purposes of the act by which the commission was created. The purposes for which the appropriation was made were not attained during the biennial period ending June 30, 1921. These purposes have existed; and the various business activities placed under the management and control of the commission have been subjects of consideration at every legislative session since 1919. The Industrial Commission was not created for merely temporary purposes. The lawmakers intended that the Industrial Commission should be a permanent body and that its activities should continue indefinitely.

The provision in § 3, chapter 151, Laws 1919 to the effect that the compensation of officers, clerks, agents, etc., together with other expenditures for the operation and maintenance of the commission shall remain within the appropriation available each year was doubtless inserted as an express restriction upon the powers of the Industrial Commission, and to preclude any idea that the commission might expend moneys in excess of those appropriated by the legislature. The limit upon the amount to be expended is the appropriation made available in each year. The claim involved in this case was within the amount available.

It is our opinion that when the act is construed as a whole, in light of the object sought to be accomplished thereby, it evidences a legislative intention that the appropriation therein made should remain available for the stated purposes until the appropriation was fully expended; or until it was repealed.

(2) We are also agreed that the general repeal clauses in the general appropriation bills of 1921 and 1923 did not operate as a repeal of the appropriation contained in the Act of 1919. These repeal clauses were only declaratory of what would have been the legal effect of such general appropriation bills without the general repeal provisions. 25 R. C. L. p. 912; State ex rel. Adair v. Drexel, 74 Neb. 776, 105 N. W. 174. See also State ex rel. Coghlan v. Poindexter, 49 N. D. 201, 190 N. W. 818.

When an act contains a provision to the effect that all acts or parts of acts in conflict therewith are repealed, the repeal extends only to those acts on the same subject or parts of such acts as are clearly in

conflict with the new act, and then only to the extent of the conflicting provisions. 26 Am. & Eng. Enc. Law, 2d ed. p. 719.

In Cyc. it is said:

"Although in a measure such a repealing clause has the form of an express repeal, yet in legal effect it adds nothing to the repealing effect of the act of which it is a part. It operates merely as an express limitation upon the extent to which it was intended that the former act should cease to be operative, namely, only so far as it is inconsistent with the new act, unless it sufficiently appears that the repealing act was intended to supersede all prior legislation upon the same subject." 36 Cyc. pp. 1097, 1098.

The repeal clauses in question here did not even purport to be absolute. According to their language the acts or parts of acts in conflict therewith were repealed only "for the periods of time" therein stated. Apparently, the legislature used this language advisedly as provisions identical in language are contained in each of the general appropriation acts; and each of them contained (immediately preceding the general repeal clause) an enumeration of the specific sections providing for the mill tax for the support of state educational institutions. There was no clear inconsistency or conflict between the general appropriation acts and § 7, chapter 151, Laws 1919. They might well stand together. In fact they have been so construed and applied by those charged with the duty of administering them. The legislature in enacting the several general appropriation bills might have considered, and probably did consider, that there was a substantial unexpended balance remaining of the appropriation contained in the Act of 1919. We are aware of no principle which will justify the inference that the legislature by the use of the repeal clauses contained in the appropriation bills of 1921 and 1923, intended to effect a repeal of § 7, chapter 151, Laws 1919. The decision of this court in State ex rel. Wallace v. Jorgensen, 34 N. D. 527, 159 N. W. 35, is not authority for the proposition that such repeal was effected. The repeal clause involved in that case was couched in quite different language. That clause stated that the act of which it was a part was intended to constitute an exclusive appropriation for every office, officer, purpose or thing therein set forth, and was intended to repeal all acts and parts of acts, appropriating or pur-

porting to appropriate money for any such offices, officers, purposes or things.

(3) We are also of the opinion that approval by the Governor of the relator's claim of salary was not an essential condition precedent to the audit and allowance of such claim by the state auditing board. The contention of the respondents, that such approval was necessary is based upon the provision in § 4, chapter 151, Laws 1919, that:

"All orders, rules, regulations, by-laws and written contracts, adopted or authorized by the commission, shall, before becoming effective, be approved by the Governor, as chairman, and shall not be in force unless approved and signed by him."

In our opinion the word "orders" as used in this section does not apply to the approval of a bill for the ordinary operating expenses of the commission. It is a familiar rule of statutory construction that the meaning of a particular word may be ascertained by reference to the meaning of the words associated with it. The rule is embodied in the maxim *noscitur a sociis.* 2 Bouvier's Law Dict.; Rawles 3d Rev. p. 2151; 26 Am. & Eng. Enc. Law, p. 608. It is also a well settled rule that in the construction of a particular statute or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it. 36 Cyc. 1147. And this rule applies with peculiar force to statutes passed at the same session of the legislature. 36 Cyc. 1151.

The act creating the Industrial Commission was merely an adjunct to certain other laws enacted contemporaneously with it. Thus, the act establishing the Bank of North Dakota with a capital of $2,000,000 (Laws 1919, chap. 147); the Home Building Association (Laws 1919, chap. 150); the North Dakota Mill and Elevator Association (Laws 1919, chap. 152); were approved and became effective the same day that the act creating the Industrial Commission was approved and became effective. All of the business projects inaugurated by these several acts were placed under the management and control of the Industrial Commission. The same legislative assembly also conferred upon the Industrial Commission power to supervise the administration of the Soldiers' Bonus Fund (Laws 1919, chap. 206). The Industrial Commission was given large and comprehensive powers as regards all these various activities and enterprises and it should not be assumed that the

legislature intended to entail upon the Governor the tremendous amount of labor which would of necessity follow if he were required to give his personal attention to, and approve, every item of expenditure of these various activities. We are constrained to the view that section 4 applies only to "documentary acts." In short, that it prescribes the manner in which the written orders, rules, regulations, by-laws and contracts made by the Commission must be executed and authenticated. The first sentence of the section is:

"The Industrial Commission shall adopt and procure an official seal and may authenticate therewith *its documentary acts.*"

Then follows the provision:

"All orders, rules, regulations, by-laws, and written contracts, adopted or authorized by the Commission shall, before becoming effective, be approved by the Governor, as Chairman, and shall not be in force unless approved and signed by him."

The word "orders" is here associated with "rules," "regulations," "by-laws" and "written contracts,"—all written documents. That this provision is intended to apply only to acts of such formality as are required to be evidenced by a writing is also the clear implication of the concluding words of the section which makes *signing* by the Governor essential to the effectiveness of the "order," "rule," "regulation," "by-law," or "written contract."

It seems clear that the word "orders" as here used was intended to apply only to written directions of the commission; and that there was no intention that every affirmative act of the commission arising in the ordinary conduct of its business should be ineffective unless and until approved by the Governor.

The statute clearly contemplates that ordinarily the Commission shall function the same as other administrative bodies,—by rule of majority. Thus, § 2 says "two members shall constitute a quorum for the transaction of business;" and § 5 says, the Industrial Commission "shall have the power . . . to remove and discharge any and all persons appointed in the exercise of the powers granted by this act, whether by the commission or by any manager of any utility, industry, enterprise or business project; and any such removal may be made whenever in the judgment of the commission the public interests require it." It is the commission that is given this power, and not any one member

of it.   In the absence of the Governor the other two members may hold
meetings, and transact such business as may regularly come before the
Commission.   If at such meeting any order, rule, regulation or by-law
is adopted, or any transaction is entered into requiring a written con-
tract, then and only then is approval and signature of the Governor es-
sential to make the action of the commission effective.

We are entirely satisfied that when the word "orders" contained in
§ 4, chapter 151, Laws 1919, is construed in light of the words with
which it is associated in the same section, and in light of the other acts
on related subjects, enacted by the same legislative assembly at the
same session, that it is not susceptible of the construction contended for
by the appellants; and that the Governor is not given the power to dis-
allow the ordinary bills of the Industrial Commission incurred in the
regular and usual conduct of its affairs.   In matters of this kind the
Industrial Commission acts the same as any other body, each member
having one vote and no more.

It follows then that there are funds available for the payment of
relator's salary; that his claim for salary presented to the state audit-
ing board was duly approved by the Industrial Commission, and it was
the duty of the auditing board under the law to audit and allow the
same.

The judgment appealed from is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL, BURKE, and BURR,
JJ., concur.