STATE OF NORTH DAKOTA EX REL. PAUL CAMPBELL, Relator, v. A. G. TORGERSON, County Auditor in and for Ward County, North Dakota, Defendant.

(220 N. W. 834.)

Opinion filed July 28, 1928.

*Paul Campbell,* pro se.

*George Shafer,* Attorney General, and *Charles Simon,* Assistant Attorney General, for defendant.

PER CURIAM. The relator petitioned to this court for the issuance of a writ of mandamus to require the defendant to cause his name to be printed upon the primary election ballot as a candidate for nomination to the office of state's attorney of Ward county at the primary election to be held on June 27, 1928. An alternative writ was issued to which a return was filed, and arguments were heard. From the affidavits submitted in support of the petition and from the return the following facts are to be deduced: On May 28, 1928, at 4:20 P. M. the relator presented a nominating petition at the office of the county auditor. The county auditor was not personally present in his office at the time and the deputy who was present interposed an objection to the filing of the petition on the ground that the law required the same to be filed before 4 o'clock on that day; but after some conversation the petition was marked "Filed," the relator suggesting that the auditor enter a memorandum showing the exact time of filing. The memorandum was not entered. Subsequently the defendant caused the name of the relator to be published as one who had filed as a candidate for nomination. The relator heard nothing further from the defendant until the night of June 5th when he was informed that the filing was protested, and on June 6th the defendant informed the affiant that he would not recognize the petition. There is a conflict between the affidavits of the relator and the defendant's verified return with reference to an understanding that the defendant would secure legal advice as to whether he was authorized to accept the petition and as to whether the petition was left in his charge with that understanding. Under our view of the law it is unnecessary to resolve this conflict in favor of either party.

The essence of the relator's contention is that the provision of the general primary election law controlling the time of the filing of candidates' petitions and requiring that they be filed before 4 o'clock P. M. on the last day does not apply to a petition for nomination to the office of state's attorney; and that, while this provision originally applied to this office when nominations were made at a party primary under the law passed in 1907, it ceased to apply when the legislature in 1919 made provision for nominating candidates upon a nonpartisan ballot. It is said that the 1919 act, though deficient in details, purports to be and is a complete legislative enactment with reference to this subject

and that, since it contains no exact limitation upon the time of the filing of petitions, the petition of the relator was in all ways regular and was properly filed. An alternative contention is advanced to the effect that, if it be held that the provision of the 1907 law is applicable, it should further be held that the requirement that a petition be filed before 4 o'clock P. M. on the last day is directory rather than mandatory.

Section 854 of the Compiled Laws of 1913, enacted as § 4, chapter 109, Session Laws of 1907, reads in part as follows:

"Every candidate for a county or district office shall not more than forty days nor less than thirty days, and before four o'clock P. M. of the thirtieth day prior to any primary election, present to the county auditor a petition giving his name, postoffice address, the title of the office to which he aspires and the party which he represents, containing the names of five per cent of the total vote cast for the candidate of the party which he represents, for the same position at the last general election; such names to be procured from at least one-fifth of the precincts of his district; provided, however, that in no case shall there be more than two hundred names, . . ."

The chapter of which the above is a part, at the time of its enactment, provided for nomination in a primary election of candidates for United States senator, members of Congress, state offices and judges of the supreme and district courts, as well as for county and district offices. As to the former class of offices, it was provided that the petition should be filed not more than sixty nor less than thirty days prior to said primary election. Sess. Laws 1907, § 3, chap. 109. The additional requirement that a petition should be filed before 4 o'clock P. M. of the thirtieth day was prescribed with reference to county and district offices only, as indicated in the above quoted portion of the statute.

It is not seriously disputed that it is within the province of the legislature to regulate primary elections and to that end that it may prescribe reasonable limitations of time within which those aspiring to nominations must file petitions in order that their names may appear upon the ballot. It is argued, however, that while the thirty-day limitation may be reasonable and compliance therewith mandatory, the general purpose of the law can not be said to depend upon compliance with the further requirement that the petition be filed "before 4 o'clock

P. M." on the last day and that therefore this provision should be construed as directory only.

We shall consider the contentions of the relator in their logical order: (1) Does § 854 of the Compiled Laws of 1913 apply to a petition to have one's name placed upon a nonpartisan or no-party primary ballot for nomination to the office of state's attorney? Neither the section, nor the act of which it forms a part, has ever been expressly repealed; but from time to time since its enactment the legislature has made provision for nominating in a nonpartisan primary election, held at the same time as the party primaries, candidates for offices which were originally embraced within the party primary election. The first officers to be removed from the party primaries were the judges of the supreme and district courts. The first section of the act providing for nonpartisan nominations for these offices (Laws 1909, chap. 82) made provision that (§ 1):

"In all petitions and affidavits to be filed by or in behalf of candidates for nominations at the primary election to the office of judge of the supreme or district court, no reference shall be made to a party ballot or to the party affiliation of such candidate." Comp. Laws 1913, § 904.

Further provision was made in two following sections for separate ballots both at the primary and general elections.

In 1913, similar provision was made regarding the offices of state superintendent of public instruction and county superintendent of schools (chapter 153, Laws of 1913); and in 1919, the same provision was extended to "all elective county offices" Laws 1919, chap. 117. Section 1 of all these acts is substantially the same except for the name of the office and is as quoted above. It will be seen that it presupposes the filing of petitions and affidavits as a preliminary step to having names placed upon the ballot and that it expressly prohibits reference to a party ballot or to the party affiliation of candidates. None of these acts contains any measure of the sufficiency of a petition or affidavit, nor any regulation with reference to the time of filing. Hence, if the relator's contentions are upheld, we must ascribe to the legislature an intention to leave such matters wholly without regulation in regard to all of the offices for which nominations are to be made at a non-partisan primary election. Would a petition signed by one or a dozen electors be suf-

ficient? If the ballot is still unprinted ten or fifteen days before election, would a petition filed at that time be in time? Are these matters left to the discretion of a ministerial officer? These are pertinent inquiries under the petitioners contentions.

In view of the policy clearly indicated in the general primary law to leave little room for the exercise of discretion by ministerial officers and to place upon aspirants for offices the duty of compliance with a definite measure of sufficiency, we are of the opinion that the regulations and the measure of sufficiency contained in the general primary law remain applicable to the nonpartisan primary, modified only by a prohibition of the mention of a party ballot or the party affiliation of the candidate, which by necessary implication, in considering the number of petitioners, also eliminates the 5 per cent requirement based upon the total vote cast for the candidate of the party with which the aspirant affiliates.

This conclusion, we think, is further supported by the repealing clauses of each act providing for nonpartisan nominations. These clauses of the nonpartisan judiciary act (Laws 1909, § 4, chap. 82) and the nonpartisan elections act governing state and county superintendents (Laws 1913, § 4, chap. 153), read:

"All acts and parts of acts in so far as they conflict herewith are hereby repealed."

The similar clauses of the act of 1919 (Laws 1919, §§ 6 and 7, chap. 117) read:

"Sec. 6. Except as herein provided such ballot shall be prepared, printed, distributed, canvassed and returned in the manner now provided for primary election and general election ballots respectively.

"Sec. 7. All other acts or parts of acts which are in conflict with the provisions hereof are hereby repealed."

It is clear from these repealing clauses that there was no intention to repeal any act or part of an act theretofore applicable to primary elections required to be held for the purpose of nominating candidates for such offices except in so far as such former act was in conflict with the later act. Such repeal clauses do not broaden the scope of the repeal beyond a repeal by implication. State ex rel. Gammons v. Sorlie, 56 N. D. 650, 219 N. W. 105. It is to be remembered that under the later act nominations are still required to be made in pri-

mary elections. Lewis's Sutherland Statutory Construction, vol. 1, § 256, says:

"Affirmative statutes which contain no reference to existing statutes, either to amend or repeal them, import that the law-maker has no conscious purpose to affect them, unless by congruous addition. On the other hand, when there is inserted in a statute a provision declaring a repeal of all inconsistent acts and parts of acts, there is an assumption that the new rule to some extent is repugnant to some law enacted before. *There is a repeal to the extent of any repugnancy in either case, but no farther.* The insertion, therefore, of such a general repealing clause adds nothing to the repealing effect of the act. But some cases hold that the insertion of such a clause has a restraining effect on the repealing force of the new statute, and that a new statute intended as a substitute or revision of a former one, if it has this general repealing clause, will not repeal the provisions of the former law which are not inconsistent with the new. . . ." (Emphasis is ours.)

As to repeals by implication, the same authority says (§ 267):

"If two statutes can be read together without contradiction, or repugnancy, or absurdity, or unreasonableness, they should be read together, and both will have effect. It is not enough to justify the inference of repeal that the later law is different; it must be contrary to the prior law. It is not sufficient that the subsequent statute covers some or even all the cases provided for by the former, for it may be merely affirmative, accumulative or auxiliary; there must be positive repugnancy; and even then the old law is repealed by implication only to the extent of the repugnancy. If, by fair and reasonable interpretation, acts which are seemingly incompatible or contradictory may be enforced and made to operate in harmony and without absurdity, both will be upheld, and the later one will not be regarded as repealing the others by construction or intendment. As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable."

In its essence the question is one of legislative intention and from our study of the controlling statutes it seems to us more consonant

with the intention of the legislature to hold that the pre-existing law governing the sufficiency of the petition and time for filing remains applicable to petitions for non-partisan nominations than to hold that these matters are subject to no requirements whatever or are left to the discretion of a ministerial officer. It is only those parts of the former act that have to do with the sufficiency of a party petition— such as requiring a statement of party allegiance or a prima facie showing that the signers are members of the same party as the candidate—that are rendered inconsistent with and inapplicable to non-partisan petitions under the later enactments. We are unable to see any substantial reason for holding that the entire section was repealed by the later enactment.

True, counsel argues that a wholly new policy was evidenced with regard to the offices for which nonpartisan nominations were provided, that the original primary law had for one of its main purposes the selection of party candidates and that it sought the perpetuation of political parties; whereas, the placing of offices in the non-partisan group tends toward the destruction of political parties. But the history of our election laws shows that one of the main purposes sought to be accomplished by the primary election law, according to the title of the act (Laws 1907, chap. 109), was the "Selection of Candidates for Election by Popular Vote" as distinguished from their selection by conventions. This purpose is carried into the subsequent nonpartisan primary election laws and to that extent the latter are consistent with the former rather than otherwise.

(2) As to the contention that the requirement that a petition be filed before 4 o'clock P. M. on the last day is directory rather than mandatory as to the hour of the day, we think little need be said. It must be conceded that the matter is an appropriate subject for legislative regulation. The legislature may fix a limitation. It can fix this limitation according to the hour of the day as well as according to the day itself. Where the purpose of a fixed limitation is clearly to remove a matter from the discretion of a ministerial officer, this purpose can only be accomplished by holding the provision to be mandatory. Under the acts in question there is abundant evidence that the sufficiency of the petition as to the number of names and time of filing was not to be left to the discretion of any ministerial officer. No such

officer is vested with authority to say whether or not the petition of John Jones filed ten minutes later could be rejected and the petition of John Smith filed three hours or a day later could be received. The burden is on the candidate to comply with the requirements of the law if he desires the advantage which the law affords of having his name printed upon the ballot. Such a law is clearly distinguishable from one which provides that by a certain time an officer is to do an act which shall affect some substantial right of an individual who has himself done all that the law requires. In such cases the requirement that an official act shall be done within a certain time may be construed to be directory as otherwise the substantial right of an individual who has in all ways complied with the law may be jeopardized. Here the burden of compliance with the law as to the time requirement is upon the candidate and not upon any officer, and the act of filing is the act of a ministerial officer having no discretion in the matter. We are of the opinion that the time requirement here is mandatory and that the officer can not be compelled by mandamus to accept and file a petition after time or to proceed upon the supposition that a petition filed after time was regular.

The alternative writ is quashed.

NUESSLE, Ch. J., and BIRDZELL, CHRISTIANSON, BURKE, and BURR, JJ., concur.