ZENITH SCHOOL DISTRICT NO. 32, Stark County, N. D.; New School District No. 8, Williams County, N. D.; Springvale School District No. 6, Stark County, N. D.; Antelope School District No. 7, Stark County, N. D.; Garden School District No. 17, Stark County, N. D.; Farmers Valley School District No. 19, Stark County, N. D.; Heart River School District No. 22, Stark County, N. D.; Wildrose School District No. 23, Stark County, N. D.; Green River School District No. 24, Stark County, N. D.; Grandvale School District No. 28, Stark County, N. D.; Badlands School District No. 14, Dunn County, N. D.; North Slope School District No. 24, Dunn County, N. D.; Patent Gate School District No. 31, McKenzie County, N. D.; all of the above and foregoing plaintiffs being sometimes hereafter designated as First Plaintiffs; and Wolf Butte School District No. 14, Adams County, N. D.; Holden School District No. 19, Adams County, N. D.; Lemmon School District No. 16, Adams County, N. D.; Kansas City School District No. 7, Adams County, N. D.; Ellefson School District No. 11, Adams County, N. D.; Solon School District No. 8, Hettinger County, N. D.; Eagle School District No. 11, Hettinger County, N. D.; Chilton School District No. 12, Hettinger County, N. D.; Mayzey School District No. 15, Hettinger County, N. D.; Clark School District No. 22, Hettinger County, N. D.; Runkel School District No. 31, Hettinger County, N. D.; which said last named school districts are hereafter sometimes referred to as Second Plaintiffs, Plaintiffs and Respondents,

v.

M. F. PETERSON, as Superintendent of Public Instruction of the State of North Dakota, Defendant and Appellant.

No. 7623.

Supreme Court of North Dakota.

Feb. 21, 1957.

Rehearing Denied March 29, 1957.

———◆———

Leslie R. Burgum, Atty. Gen., Paul M. Sand, and Helgi Johanneson, Asst. Attys. Gen., for appellant.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for respondents.

BURKE, Judge.

In this proceeding thirty-two school districts sought a writ of mandamus directing the defendant, superintendent of public instruction, to certify to the state auditor for payment out of the state equalization fund certain sums which plaintiffs allege are due to the county tuition funds of the several counties in which the plaintiff school districts are located. The defendant joined issue with the plaintiffs by alleging that certification had been made for all sums legally due. The district court found for the plaintiffs and judgment was entered granting the writ as prayed for in the complaint. The defendant has appealed from the judgment.

The only issues upon this appeal relate to statutory construction and they can be best delineated by setting forth the controlling statutes, subsequent amendments thereto, the original construction thereof and the present claims of the parties with respect thereto.

The controversy concerns the right of the several counties to elementary per pupil payments to the county tuition fund out of the state equalization fund. These payments were first authorized by Chapter 332, Laws of N. D. 1949. Section 3 of that act provides:

"There shall be paid out of the county tuition fund to the school districts of the county as elementary per pupil payments based on enrollment in such districts:

"1. To districts maintaining one room rural schools, if the district is composed of eighteen sections of land or less, the sum of eight hundred dollars for ten pupils or less in a school;

"2. To districts maintaining one room rural schools, if the district is composed of more than eighteen sections of land, the sum of twelve hundred dollars for ten pupils or less in a school;

"3. * * *

"4. To all other districts of the county, seventy dollars for each pupil."

Section 5 of the Act provided:

"On or before July first of each year the clerk of each school district, shall certify to the county superintendent of schools the number of bona fide elementary students who actually were enrolled in the district during the preceding school year and who attended school in such district for ninety days or more during such year."

Section 6 of the Act provides:

"The county superintendent of schools shall determine from the certificates submitted to him by each school district or school, the elementary per pupil payments due each school district or school * * *."

Section 7 of the Act provides:

"Not later than December first the county superintendent of schools shall certify to the county auditor a list of the school districts or schools entitled to elementary per pupil payments together with the amounts to which the several districts or schools are entitled. The county auditor shall pay one-half

of the amount due to each district or school upon receiving such certificate, and shall pay the balance due on or before May fifteenth of each year * * *."

Section 9 of the Act provides:

"The superintendent of public instruction may make such rules and regulations covering the certification to the county superintendents of schools of the information and evidence required by the provisions of this Act and governing appeals from the decisions of county superintendents of schools as may be necessary. He shall prepare and distribute to the county superintendents of schools blank forms for the certificates from schools or school districts to the county superintendents."

The statute creating the county tuition fund from which these payments must be made is Section 57–1525, NDRC 1943. This section was amended by Chapter 332, § 2, Laws of N. D. 1949 to read as follows:

"The county tuition fund shall consist of the taxes collected by virtue of the ten mill levy made as provided by section 57–1524 and the balance remaining from collections of the per capita school tax under the provisions of section 57–1523 after the deductions made as provided in section 15–3923. Grants from the state equalization fund shall be converted into and become a part of the county tuition fund of each county."

Grants from the state equalization fund to county tuition funds were payable in accordance with the provisions of Section 15–4019, NDRC 1943, as amended by Section 6, Chapter 149, Laws of N. D. 1949. This section provided:

"On or before the first day of September of each year the county superintendent of schools of each county shall submit to the superintendent of public instruction a request for a grant in aid from the state equalization fund for the county tuition fund. The request shall be filed on forms furnished by the superintendent of public instruction and shall state the full amount of the elementary per pupil payments to be made to each school district that has complied with the provisions of law relating to the county tuition fund. The superintendent of public instruction shall determine the amount of the grants in aid to which each county is entitled by subtracting from the full amount of the elementary per-pupil payments to be made in the county, the product of the taxable assessed valuation of property in the county multiplied by 9.5 mills. The balance will be the amount of aid to which the county is entitled."

Section 15–4020, NDRC 1943, as amended by Chapter 149, § 7, Laws of N. D. 1949, provided that the superintendent of public instruction should certify to the state auditor the amounts found to be due to the county tuition funds of the several counties and that the state auditor should make the payments out of the equalization fund in accordance with such certification.

Prior to the enactment of Chapter 332, supra, per pupil payments to school districts were made under the provisions of Chapter 255, Laws of N. D. 1941, Chapter 15–40, NDRC 1943. These payments were based upon a formula which gave consideration to the number of pupils and the assessed valuation per pupil. Under the provisions of this chapter the county superintendents were required to file the necessary information, based upon the previous year's school records, with the superintendent of public instruction on or before the first day of August of each year. Upon completing his computations the superintendent would certify the results to the state auditor, who would immediately make payment directly to the school districts of one half of the sum found to be due them. The balance would be paid on the following April first.

There never was any question raised as to the construction of this act. It became law upon July 1, 1941. The county superintendents filed their reports as required, the superintendent of public instruction made his calculations and payments were made to the school districts in the fall of 1941 and in April 1942 upon the basis of number of pupils attending school and the assessed valuation of the property in the district for the school year 1940–1941.

This method of payment was continued from year to year until the 1949 statute was adopted. This statute took effect July 1, 1949, and the construction placed upon it by the superintendent of public instruction was that it applied to all calculations of per pupil payments and payments out of the equalization fund to be made thereafter. He therefore prepared the necessary forms for the required reports from school district clerks and county superintendents of schools and forwarded them to these officials promptly so they could make their reports within the time prescribed by statute. Payments were then made in 1949 and 1950 upon computations based upon the school records for the year 1948–1949. Again there was no challenge to this construction of the law.

In 1951, Section 3 of Chapter 332, supra, which had been integrated into the code as Section 15–5601, 1949 Supp. NDRC 1943 was amended. Laws 1951, c. 148. This amendment made substantial changes in per pupil payments. Again the superintendent of public instruction construed the act as applicable to all payments to be made out of the equalization fund after its effective date and again there was no challenge to his construction.

In 1953, the amendment with which we are directly concerned was enacted. It is Chapter 143, Laws of N. D. 1953. This amendment added a new subsection to Section 15–5601, 1949 Supp. NDRC 1943 which provided:

"6. It is further provided that a district shall receive payments under subsections 1 and 2 of this section providing the school board has made a written agreement for the attendance of the pupils in another public school and vehicular transportation is furnished. * * *."

This amendment became law on July 1, 1953, and while the superintendent of public instruction held that it applied to all payments made out of the equalization fund after that date, he also held that only schools which closed after the effective date of the act would be eligible for transportation payments and he notified the county superintendents to that effect. The plaintiff school districts filed no claims for transportation in 1953. Consequently they received no payments under the 1953 amendment during the school year of 1953–1954. Whether this failure to file was because of the opinion of the superintendent of public instruction or for some other reason is not shown by the record. In August 1954, the superintendent of public instruction at the request of objecting county superintendents obtained an opinion from the attorney general which held that, under the 1953 amendment, the date of the closing of a school was immaterial and that any district with a closed school or schools and otherwise qualified was entitled to transportation payments. The plaintiff school districts thereupon filed claims for and were paid transportation payments during the school year 1954–1955.

In 1955 the legislature amended subsection 6 of Section 15–5601, 1953 Supp. NDRC 1943, to provide that transportation payments could only be paid to districts in which a school or schools had been closed subsequent to July 1, 1949. Laws 1955, c. 154. This act took effect July 1, 1955 and the superintendent of public instruction following long established practice construed it as applicable to all payments to be made out of the equalization fund after that date. He therefore decided that districts in which the schools had closed prior to July 1, 1949 were not elegible for transportation payments after July 1, 1955. These plain-

tiffs however filed claims for transportation payments to be made in the fall of 1955 and the spring of 1956 although the schools in the plaintiff districts had closed prior to July 1, 1949. The superintendent of public instruction rejected these claims and refused to certify them to the state auditor for payment. The plaintiffs thereupon instituted this proceeding in which they seek a writ of mandamus directing the superintendent of public instruction to certify the disputed claims for payment.

The contention of the plaintiffs is that since the 1953 statute was in full force and effect during the school year 1954–1955 they are entitled to payments in the fall of 1955 and the spring of 1956 based upon the school records of the school year 1954–1955.

The contention seems to be based upon a mistaken assumption that, because the payments in any one year are based upon a computation made upon the records of the previous school year, such payments are in the nature of a reimbursement for expenses incurred in the prior year. Upon this assumption plaintiffs argue that since the law allowing them reimbursement or payment for transportation for the school year 1954–1955, was in effect during that whole school year they are entitled to such payment or reimbursement without regard to what the law may be at the time such payment or reimbursement will be made.

■ State aid to school districts, however, is not reimbursement for or payment for anything. It is a grant in aid and in so far as the local districts are concerned it is in the nature of a gratuity. We have no doubt but that the purpose of the many acts relating to state aid to school districts was to provide for and regulate payments for state aid out of the equalization fund after the effective date of such acts. The fact

that payments each year were to be computed upon the records of the previous year is of no significance. The payments were for the year in which they were made, but because complete records were not available for that year at the time the payments were made, they were, as a matter of convenience, computed on the previous year's records. We are satisfied therefore that no payments for transportation could be made out of the equalization fund after July 1, 1955, to any school district which was not qualified to receive them under the 1955 Act.

While we think the language of the statute under consideration is so clear that there is no occasion to resort to extrinsic aids to construction we think it well to point out that the construction we have adopted is in accord with the construction that the superintendent of public instruction has given to this statute and every like statute ever since the program of state aid to school districts was first inaugurated. As to the weight to be given to executive construction, see: State ex rel. Gammons v. Sorlie, 56 N.D. 650, 219 N.W. 105; State v. Equitable Life Assur. Soc. of U. S., 68 N.D. 641, 282 N.W. 411.

■ It follows that the plaintiff districts, in which the schools were closed prior to July 1, 1949, were not qualified under the 1955 amendment of Section 15–5601, 1953 Supp. NDRC 1943, to receive any payments out of the equalization fund for elementary per pupil aid after July 1, 1955.

The judgment of the district court must therefore be reversed and this proceeding dismissed.

GRIMSON, C. J., and JOHNSON, MORRIS and SATHRE, JJ., concur.