MUTUAL BENEFIT LIFE INSURANCE COMPANY vs. COMMONWEALTH.

Suffolk.    April 13, 1917. — May 24, 1917.

Present: LORING, BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Insurance,* Annuity, Taxation.  *Annuity.   Tax,* On insurance companies and associations.   *Words,* "Policy."

Under the definition contained in St. 1907, c. 576, § 66, a corporation engaged in the business of issuing contracts for the payment of annuities must be deemed to be a life insurance company.

A company engaged in the business of issuing annuity contracts is subject to the provisions of St. 1909, c. 490, Part III, § 26, as amended by St. 1915, c. 217, § 1, requiring the payment annually by a company, which is engaged, as defined in St. 1907, c. 576, and amendments thereto, in the business of life insurance in this Commonwealth, of an excise tax of one quarter of one per cent upon the net value of all policies in force on December 31 of the preceding year.

The above interpretation of the statute does not result in double taxation.

PETITION, filed in the Supreme Judicial Court on January 10, 1917, under St. 1909, c. 490, Part III, §§ 70, 71, for the abatement and refunding of a tax paid under the circumstances stated in the opinion.

The case was heard upon the petition, answer and agreed facts by *Pierce,* J., who reserved it for determination by the full court.

*F. H. Nash,* (*A. H. Brooks* with him,) for the petitioner.

*W. H. Hitchcock,* Assistant Attorney General for the Commonwealth.

BRALEY, J.    The petitioner alleges that it is a foreign corporation engaged in the business of life insurance in this Commonwealth upon the "ordinary" as distinguished from the "industrial" plan as well as issuing contracts for the payment of annuities.    In accordance with the St. of 1909, c. 490, Part III, § 26, as amended by St. 1915, c. 217, § 1, it made return to the tax commissioner upon the prescribed form of the total number of its policies in force December 31, 1915, held by residents, with their aggregate value and the aggregate amount of insurance, and the excise assessed thereon the validity of which is not questioned has been duly paid.    But the tax commissioner within three months after the date of the first return having required that a supplemental return

should be made stating the "amount of reserve" on its annuity contracts in force in this jurisdiction on December 31, 1915, the petitioner without admitting that the net value of its annuity contracts was taxable complied, and, a tax of one fourth of one per cent having been levied and paid under protest, this petition for abatement and refunding is brought under St. 1909, c. 490, Part III, §§ 70, 71.

The authority to levy the excise depends upon the construction of St. 1909, c. 490, Part III, § 26, as amended by St. 1915, c. 217, § 1, which reads as follows, "A domestic or foreign company or association which is engaged by its officers or by agents as defined in chapter five hundred and seventy-six of the acts of the year nineteen hundred and seven and amendments thereof and additions thereto, in the business of life insurance within this Commonwealth shall annually pay an excise tax of one quarter of one per cent upon the net value of all policies in force on the thirty-first day of December of the year preceding that in which the tax is payable, issued or assumed by such company and held by residents of the Commonwealth, as determined by the tax commissioner upon the return required under the provisions of this section and such other evidence as he may obtain. Every company or association subject to the provisions of this section shall annually, on or before the tenth day of May, make a return to the tax commissioner, signed and sworn to by its president or secretary and its actuary, giving in such detail as the tax commissioner shall require the total number of policies in force on the preceding thirty-first day of December held by residents of this Commonwealth, the aggregate net value thereof and the aggregate amount insured. In respect to industrial business the aggregate net value so reported may be estimated upon the basis of such general averages or otherwise as shall be authorized by the tax commissioner with the approval of the insurance commissioner, but in respect to ordinary business the aggregate net value reported shall be the combined aggregate of the mean reserve computed for each policy, or each group of policies requiring a separate computation to determine their net value, on the basis of valuation used or approved by the Massachusetts insurance department under the provisions of section eleven of chapter five hundred and seventy-six of the acts of the year nineteen hundred and seven and amendments

thereof and additions thereto. Whenever the tax commissioner believes it to be for the best interests of the Commonwealth he may require in addition to the above information the following details relating to each policy of ordinary business in force on the preceding thirty-first day of December and held by a resident of Massachusetts; the number, date, and class, the age of the assured life, the amount insured and the net value."

The respondent concedes on the authority of *Curtis* v. *New York Life Ins. Co.* 217 Mass. 47, that a contract for an annuity is not strictly a contract of life insurance as defined in R. L. c. 118, § 3. But the recodifying St. of 1907, c. 576, § 66, without expressly discarding the definition, provides, that "All corporations, associations, partnerships or individuals doing business in this Commonwealth under any charter, compact, agreement or statute of this or any other State, involving the payment of money or other thing of value to families or representatives of policy and certificate holders or members, conditioned upon the continuance or cessation of human life, or involving an insurance guaranty, contract or pledge for the payment of endowments or annuities, shall be deemed to be life insurance companies. . . ." And the conclusion is irresistible that if the petitioner had issued only contracts for the payment of annuities, it must be deemed to be a life insurance company. If so it would be accurately described as in "the business of life insurance." It is none the less so engaged because it also issues policies of life insurance. The words "the business of life insurance," "all policies in force," "total number of policies in force," "ordinary business," "each policy of ordinary business," and "the amount insured and the net value" found in § 26, as amended, are consequently to be read in connection with the spirit and purpose of § 66 of the St. of 1907, c. 576. While language more technically appropriate might have been used, the business of issuing contracts for annuities is under the statute "the business of life insurance," and if the word "policy" ordinarily imports that at death a certain sum will be payable by the insurer, yet a "policy" is a contract, and "each policy of ordinary business" where the insurer engages solely in providing such security would cover the business of issuing contracts of annuity.

By the statute this class of contracts is also put in the category

of endowment contracts where a certain sum is to be paid the insured if he lives for a definite period, or, if he dies before the period ends, payment is to be made to his heirs or to the designated beneficiary, which were held in *Curtis* v. *New York Life Ins. Co., supra,* as not being contracts of insurance as defined in R. L. c. 118, § 3. The statute also would include a contract of term insurance where the life is insured only for a term of years or until the assured shall arrive at a certain age. *Briggs* v. *McCullough,* 36 Cal. 542, 550. *Rosenplanter* v. *Provident Savings Life Assurance Society,* 37 C. C. A. 566. *Carr* v. *Hamilton,* 129 U. S. 252, 253. The St. of 1915, c. 217, § 1, was enacted after the decision in *Curtis* v. *New York Life Ins. Co., supra,* where it was further said, when speaking of the different forms which the business of life insurance has assumed in recent years, "one of the well known forms of contract is that of annuities, — not within the technical meaning of the term, or incorporeal hereditaments created by grant, — but in the modern sense of a simple promise to pay a certain amount yearly."

We are accordingly of opinion that by the words "all policies in force on the thirty-first day of December of the year preceding that in which the tax is payable," the Legislature intended to include all contracts of every description issued by life insurance companies doing business in this Commonwealth which are based upon the "continuance or cessation of human life." *Shelton* v. *Sears,* 187 Mass. 455, 460. *Connecticut Mutual Life Ins. Co.* v. *Commonwealth,* 133 Mass. 165.

Nor does this conclusion result in double taxation, as the annuitant pays a tax only on income. St. 1909, c. 490, Part I, § 4, cl. 4, as amended by St. 1909, c. 440, § 1. St. 1916, c. 269, § 5 (a). The amount assessed to the petitioner moreover is in no sense a property tax, but an excise exacted for the privilege of transacting its particular business within this jurisdiction. *Commonwealth* v. *Lancaster Savings Bank,* 123 Mass. 493, 496.

The levy having been authorized, the practice of previous years during which no return as to annuities was required, and no excise was imposed, is immaterial, and the petition must be dismissed. *Attorney General* v. *Barney,* 211 Mass. 134, 137.

*So ordered.*