[File No. 6499.]

THE STATE OF NORTH DAKOTA and Oscar E. Erickson, Commissioner of Insurance of the State of North Dakota, Appellants-Respondents, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a Corporation, Respondent-Appellant.

(282 N. W. 411.)

Opinion filed May 23, 1938.   On rehearing November 14, 1938.

*Francis Murphy* and *Harold Hopton,* for appellants-respondents.

*Dullam & Young,* for respondent-appellant.

NUESSLE, J. This action was brought to recover certain tax charges claimed to be due from the defendant to the state of North Dakota on money received as considerations (also hereinafter designated as premiums) for annuity contracts in 1926 and subsequent years. The defendant, answering plaintiff's complaint, denied that the premiums in question were taxable under the statute, § 4924, Supplement to the 1913 Compiled Laws of North Dakota, on which the plaintiffs rely, and further as to the claimed tax charges on premiums received during the years prior to 1930, pleaded the statute of limitations.

The case was tried to the court without a jury. The court held that the premiums in question were taxable, but also held with respect to the tax on premiums paid prior to 1930, that the statute of limitations had run and that the plaintiffs were not entitled to recover the same. Judgment was ordered and entered accordingly. Whereupon the plaintiffs appealed from the portion of the judgment which was entered in favor of the defendant and the defendant in turn appealed from that portion of the judgment entered in favor of the plaintiffs.

There is no dispute as to the facts which were stipulated by the parties. It appears from this stipulation that the defendant is a foreign corporation, organized as a life insurance company; that in each of the years beginning with 1926 and thereafter up to and including the year 1935, it applied for and received a certificate of authority to carry on and transact business in the state of North Dakota and during

such times engaged in the conduct and transaction of business therein; that in the usual course of its business within the state, it issued insurance policies and received premiums therefor; that during said years in the usual course of its business within the state, it also entered into certain contracts commonly known and described as annuity contracts, and in payment therefor received from the persons to whom such contracts were issued, certain stipulated sums as considerations or premiums; that such annuity contracts were in a variety of forms and that the same were not contracts of life insurance. Forms of these annuity contracts were offered in evidence and the considerations therefor are referred to therein as premiums.

During the several years above mentioned, the defendant, in compliance with § 4915, Comp. Laws 1913, filed its annual statements (see § 4916, Comp. Laws 1913) with the Commissioner of Insurance of the state of North Dakota, and made its annual reports as required by § 4931, Comp. Laws 1913. In addition thereto, the several commissioners of insurance annually required of it and it made its "State ment of Taxable Premiums," showing in some detail the gross amount of premiums received during the several years on insurance written in North Dakota, and the deductions which it claimed should be made therefrom in computing the amount on which it was liable to taxation pursuant to § 4924, 1925 Supplement to the 1913 Comp. Laws. The forms for these statements were provided by the commissioners of insurance and made no reference to premiums or considerations received for annuity contracts until the year 1936, when the then Commissioner of Insurance amended the form to read:

"Gross premiums received during 19...., *including* $........, *for annuities* ............................., $........."

(The amended portion is italicized.) The commissioner then raised the point that premiums received for annuity contracts were subject to taxation the same as premiums for life insurance contracts, and demanded of the defendant the payment of such taxes upon the annual considerations which had been received by it for annuity contracts in the state of North Dakota in each-of the years from 1926 to 1935, inclusive. This was the first instance in which such taxes were claimed or demanded. When payment thereof was refused by the defendant the instant action was brought.

Section 4924, Supplement to the 1913 Comp. Laws, the section on which the plaintiffs predicate their claim to the taxes in question, reads as follows:

"Every insurance company doing business in this state, except stock and mutual companies organized under the laws of. this state, shall at the time of making annual statement of business done as required by law, pay to the commissioner of insurance two and one-half per cent of the gross amount of premiums received in this state during the preceding year. Upon payment of such sum the commissioner of insurance shall issue the annual certificates provided by law."

So it will be seen at once that the first and principal question for determination in this suit is as to whether the word "premiums" as contained therein includes the considerations paid by the purchasers for annuity contracts. If this question be determined adversely to the plaintiffs then we need go no further. If, however, it be determined in accordance with their contentions then it will be necessary to pass upon the further question as to whether the taxes claimed on account of premiums for annuities paid prior to 1930, are barred by the statute of limitations.

On argument and in their briefs, counsel on both sides spent much time on the question of what was meant by the word "premium." Of course judicial notice must be taken of the meaning of words and phrases in the English language, and of such matters of common knowledge and science as may be known to all men of ordinary understanding and intelligence. See § 7938, Comp. Laws 1913. And § 7325, Comp. Laws 1913, provides: "Words and phrases are construed according to the context and the approved usage of the language; but technical. words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or are defined by statute, are to be construed according to such peculiar and appropriate meaning or definition." Again the statute provides that "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears. . . ." Comp. Laws 1913, § 7278. Now the dictionaries and legal encyclopedias give the word "premium" a diversity of meanings. In this connection it is interesting to note that in the forms of the annuity contracts issued by the defendant which are. in the record, the considerations for such con-

tracts are therein described as "premiums." And the courts in construing statutes identical with or similar to that here involved have differed in their conclusions. In some cases the word "premium" is given the meaning for which the plaintiffs here argue. See Northwestern Mut. L. Ins. Co. v. Murphy, — Iowa, —, 271 N. W. 899, 109 A.L.R. 1054. Others have held in line with the contentions of the defendant. See People ex rel. Metropolitan L. Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed in 231 N. Y. 630, 132 N. E. 916; Com. v. Metropolitan L. Ins. Co. 254 Pa. 510, 516, 98 A. 1072; Daniel v. Life Ins. Co. (1937; Tex. Civ. App.) 102 S. W. (2d) 256. In view of this confusion in definition it seems to us that the construction of § 4924, supra, must be determined largely by a consideration of this and cognate statutes in the light of their histories. And some weight also must be given to the departmental construction put upon § 4924 by the several commissioners of insurance through the years the statute was in effect prior to the year 1936 when the point now in issue was first raised.

Section 4924, supra, was enacted substantially in its present form as § 40 of chapter 69, Laws of Dakota Territory 1885. It remained in effect until the enactment of the North Dakota Revised Codes of 1895. The revisors of the Code adopted chapter 69 of the Laws of Dakota 1885 substantially as the same was originally enacted. But apparently through inadvertence § 40 thereof was omitted. The next (1897) legislature, however, the omission having been discovered, re-enacted this section as chapter 94, Session Laws 1897, which provides: "Every insurance company doing business in this state, except joint stock·and mutual companies, organized under the laws of this state, shall at the time of making the annual statement of business done in 1897, as required by law, pay to the Commissioner of Insurance five per cent of the gross amount of premiums received . . . during the year 1897, and two and one-half per cent on the gross amount of premiums received each year thereafter. . . ."

Section 4915, Comp. Laws 1913, provides that: "Every insurance company doing business in this state must transmit to the commissioner of insurance a statement of its condition and business for the year ending on the preceding thirty-first day of December. . . ."

And § 4916, Comp. Laws 1913, prescribes with particularity the

contents of such annual statement. These sections also were included in chapter 69, Laws of Dakota Territory 1885, as §§ 16 and 17 thereof.

Section 4836, Comp. Laws 1913, provides that: "Any number of persons, not less than seven, may form a corporation to carry on the business of insurance, either upon the stock or mutual plan, against loss or damage by fire, lightning, cyclone, tornado or hail, or the risks of inland navigation and transportation, or to make insurance upon the lives of persons and every insurance pertaining thereto, and against accidental injuries including the granting, purchasing and paying of annuities and indemnities and to transact fidelity insurance and corporate suretyship . . . ."

This section was enacted as § 3087, Revised Codes of 1895. It combined the provisions of § 1 of chapter 69, Laws Dakota Territory 1885, which authorized the incorporation of companies "To make insurance . . . against loss or damage by fire, lightning, cyclone, tornado, or hail, and the risks of inland navigation and transportation" and of § 1, chapter 73, Session Laws 1891, providing for the incorporation of companies "to make insurance upon the lives of persons and every insurance pertaining thereto, and against accidental injuries, including the granting, purchasing and paying of annuities and indemnities." And to these added "and to transact fidelity insurance and corporate suretyship." Prior to the enactment of chapter 73, Session Laws 1891, there had been no law expressly authorizing the incorporation of life insurance companies, nor had there been any legislative recognition of or reference to the business of writing annuity contracts.

Section 4916, Comp. Laws 1913, to which reference has been made, provides that the annual statement required to be filed by insurance companies shall show: (1) the name and location of the company; (2) the amount of capital stock paid in cash; (3) the property or assets of the company, particularizing as to eight classes thereof; (4) the liabilities, specifying the amount of "losses unpaid," the amount of claims for "losses resisted," the amount of "unearned premiums on outstanding risks," the amount of money borrowed and remaining unpaid, the amount of all other existing claims; (5) the income of the company during the preceding year, specifying the amount of interest received, the whole amount of cash premiums received, stating sepa-

rately those received on policies written in the state, and the whole amount of income received from all sources; (6) the expenditures during the preceding year, specifying seven items, among which are: the whole amount of "losses" paid during the preceding year, also, separately, the amount of "losses" paid upon "risks" taken in this state, and, finally, the whole amount of all other expenditures; (7) the gross amount of "risks" taken during the year, stating the amount in this state separately, the whole amount of "risks" outstanding, and the whole amount of "losses" incurred during the year, stating separately those incurred in this state. It is to be noted that there is no reference in this statement to annuities or premiums received for annuities. Nor can it be said that there is anything in this section which in any way indicates that annuities or the premiums or considerations for annuities were within the contemplation of the legislature when this section was enacted or re-enacted. Rather the only conclusion that can be drawn from it is to the contrary. It would be strange indeed if this were not so. For, in the first place, the statute is a statute of general application. The statement is required of all insurance companies. In the second place, the section was first enacted long prior to any legislative recognition that annuity contracts were or could be made by insurance companies. In this connection § 4931, Comp. Laws 1913 must also be given consideration. While the statement prescribed by § 4916 is required to be made by all insurance companies, § 4931, enacted as chapter 141, Sess. Laws 1907, and applicable to life insurance companies only, provides that: "In addition to any other matter which may be required by law or pursuant to law by the commissioner of insurance to be stated therein, every annual report of every life insurance company doing business in this state shall contain an accurate, concise and complete statement of the following matters, to-wit: . . ." The section then particularizes as to the matters to be set out in the report, listing them under sixteen heads, showing the company's assets, its obligations, expenses, business done, money paid, profits and losses, dividends declared, and generally all information pertaining to the business and financial condition of the company. The only mention made of premiums is in paragraph eleven of these specifications which requires "A complete statement of the profits and losses upon the business transacted during the year and the sources of such gains and losses,

and a statement showing separately the margins upon premiums for the first year of insurance and the actual expenses chargeable to the procurement of new business incurred since the last annual statement. . . ." No mention of annuities or annuity contracts is made anywhere in this section.

There is a clear distinction between an insurance policy or contract and an annuity policy or contract. This is implied by the stipulation for it is expressly stated therein that the annuity contracts on account of which this controversy arose are not contracts of life insurance. And the cases which have considered the subject have uniformly recognized the distinction. See Curtis v. New York L. Ins. Co. 217 Mass. 47, 104 N. E. 553, Ann. Cas. 1915C, 945; Re Thornton, 186 Minn. 351, 243 N. W. 389; People ex rel. Metropolitan L. Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed in 231 N. Y. 630, 132 N. E. 916, supra; Hall v. Metropolitan L. Ins. Co. 146 Or. 32, 28 P. (2d) 875; Com. v. Metropolitan L. Ins. Co. 254 Pa. 510, 98 A. 1072, supra; Rishel v. Pacific Mut. L. Ins. Co. (C. C. A. 10th) 78 F. (2d) 881; Carroll v. Equitable Life Assur. Soc. (D. C.) 9 F. Supp. 223; 3 C. J. S. pp. 1374, et seq.

Section 6458, Comp. Laws 1913, defines insurance as a contract whereby one undertakes to indemnify another against loss or damage arising from an unknown or contingent event. And § 6460, Comp. Laws 1913, says that the most usual kinds of insurance are (1) Marine insurance, (2) Fire insurance, (3) Life insurance, (4) Health insurance, (5) Accident insurance. These sections were in effect at the time of the adoption of chapter 69, Laws of Dakota 1885, to which we have heretofore referred. When chapter 73, Session Laws 1891, supra, was enacted, the legislature evidenced a recognition of the fact that the writing of annuity contracts was not within the scope of the insurance business by specifically providing that insurance companies might write such contracts. Were it otherwise there was no necessity for this provision. Further legislative recognition of this fact was later evidenced by the enactment of chapter 142, Sess. Laws 1897 (Comp. Laws 1913, § 5205) which provides for the organization and management of annuity, safe deposit, surety and trust companies. Nowhere in the statute is there a definition of an annuity or an annuity contract. And though § 4836, supra, authorizes the incorporation

of insurance companies with power to grant and pay annuities, there is no statutory direction or regulation as to the character or form of such contracts. On the other hand, the terms and provisions of insurance contracts are meticulously prescribed by §§ 6634, et seq.

Section 4915, Comp. Laws 1913, requires that the statement contemplated by § 4916, supra, shall be filed with the Commissioner of Insurance. Section 4924, supra, provides that at the time of making the statement pursuant to § 4916, every insurance company doing business within this state shall pay to the commissioner the tax imposed by § 4924, and that the commissioner shall not issue his certificate of authority to transact business until such tax is paid. Section 4924, clearly refers to the statement defined by § 4916. The latter section applies to all insurance companies, whether organized for the purpose of writing life insurance or for the writing of the several other kinds · of insurance.

Taking all of the foregoing matters into consideration it is obvious that when the legislature provided in· § 4924 that the tax should be reckoned upon the gross amount of premiums received, it had in mind such premiums only as were thus required to be specified in the· statement prescribed in § 4916. It is likewise clear that "premium" or "considerations" for annuity contracts were not among those required to be specified.

The record in the instant case does not disclose when the defendant first began to do business within the state of North Dakota, nor when it first began to enter into annuity contracts. It does appear, however, that it wrote such contracts in the year 1926 and continuously thereafter. Neither does it appear in the record whether or not such contracts were entered into by any other company, state or foreign, prior to 1926, nor whether annuity contracts were ever made by other than insurance companies. But, as we have shown, the legislature did in 1891 authorize the incorporation of insurance companies with the power to engage in the business of granting, purchasing, and paying of annuities. And in 1897 (chapter 142, Sess. Laws 1897, now § 5205, Comp. Laws 1913, supra), the legislature authorized the incorporation of annuity companies. There is, however, no statute requiring that annuity companies shall pay a tax on premiums received similar to that imposed on insurance companies under the provisions of § 4924. And though

annuities were written by the defendant as early as 1926, and continuously thereafter, it was never required to pay a tax on premiums taken for annuity contracts. And clearly no claim of right to tax such premiums was ever made. The special form provided by the several commissioners of insurance for their own convenience in computing the amount of this tax in no case made reference to premiums upon annuity contracts until the amended form was submitted by the then commissioner in 1936. And in that year, when the question arose as to whether such annuity premiums were taxable, the attorney general of the state of North Dakota in a written opinion ruled that they were not. Thus it appears that at all times prior to 1936 the departmental construction was that premiums taken for annuity contracts were not within the contemplation of the legislature when it used the words "gross premiums" in § 4924. In the meantime, different legislative assemblies had enacted legislation dealing with questions of insurance and of taxation, but no amendment was made of this statute. This is pertinent in determining the legislative intent. The "legislature is presumed to know the construction of its statutes by the executive departments of the state." John Hancock Mutual L. Ins. Co. v. Lookingbill, 218 Iowa, 373, 253 N. W. 604. And if that construction is erroneous it can correct the error. We think that under the circumstances as disclosed in the instant case the construction placed upon section 4924, supra, by the insurance department is entitled to great weight in resolving the question of construction now before us and would be determinative were we in doubt in this matter. While it is true that the rulings of executive officers who have practically construed a law are not conclusive, nevertheless "the ruling of an executive officer upon a point where it is his sworn duty to act, especially where the rulings have been acquiesced in by those whose financial interests were involved, are always given considerable weight in the courts, and when the power is doubtful the uniform rulings in an executive office would be followed, and allowed to turn the scale. Cooley, Const. Lim. 3d ed. marg. pp. 69, 70." State ex rel. Edgerly v. Currie, 3 N. D. 310, 55 N. W. 858. See also Barrett v. Stutsman County, 4 N. D. 175, 59 N. W. 964; State ex rel. Kinzer v. Hall, 50 N. D. 708, 197 N. W. 770; State ex rel. Gammons v. Sorlie, 56 N. D. 650, 219 N. W. 105; Ford Motor Co. v. State, 59 N. D. 792, 231 N. W. 883.

As we have heretofore stated, statutes almost identical with § 4924 have been considered and construed in other states where the same contentions have been made that are made in the instant case. The plaintiffs cite and particularly rely upon the case of Northwestern Mut. L. Ins. Co. v. Murphy, — Iowa, —, 271 N. W. 899, 109 A.L.R. 1054, supra. At first blush it appears that this authority tends strongly to sustain their position. But an examination of the opinion in that case discloses that the Iowa statute involved required that "Every insurance company . . . shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year." The Iowa court, construing this statute, held that premiums received for annuity contracts should be included in reckoning the amount of the tax to be paid. The court, in so holding, said: "That these words 'business done in this state' were inclusive of the granting and selling of annuities was made definitely certain by legislative enactment prior to the year 1934. That is, the legislature had identified the granting and selling of annuities as a part of the business permitted and anticipated to be done in this state by insurance companies in the enjoyment of their business licenses. Reference is to chapter 147 of the Acts of the Forty-fifth General Assembly, which added to chapter 398 of the 1931 Code; § 8673–a, which provides that 'any life insurance company organized on the stock or mutual plan may grant and sell annuities.' This act was applicable to insurance companies of the class to which plaintiff belongs." So the holding is bottomed on the proposition that there was legislative recognition that the granting and selling of annuities was a part of the business of insurance companies, and that the tax was imposed upon all premiums received for business done in the state. It is to be noted that the words of the Iowa taxing statute are "gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year." On the other hand, the defendant particularly cites and relies upon People ex rel. Metropolitan L. Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed in

231 N. Y. 630, 132 N. E. 916, and Com. v. Metropolitan L. Ins. Co. 254 Pa. 510, 98 A. 1072, supra. These cases arose under statutes practically identical with § 4924, and their holdings are, without equivocation, exactly in line with the contentions of the defendant in the instant case to the effect that premiums taken for annuity contracts were not within the legislative intent when § 4924, supra, was enacted. See, also, Daniel v. Life Ins. Co. (1937; Tex. Civ. App.) 102 S. W. (2d) 256, supra.

The judgment of the district court is reversed and the case is remanded with directions that judgment be entered for the defendant.

HUTCHINSON and R. G. McFARLAND, Dist. JJ., concur.

CHRISTIANSON, Ch. J., and MORRIS and BURR, JJ., disqualified, did not participate. Honorable WM. H. HUTCHINSON, Judge of the Third Judicial District, Honorable R. G. McFARLAND, Judge of the Fourth Judicial District, and Honorable A. J. GRONNA, Judge of the Fifth Judicial District, sitting in their stead.

McFARLAND, Dist. J. (concurring specially).

I concur in the decision of Judge Nuessle. The Iowa case (Northwestern Mut. L. Ins. Co. v. Murphy, — Iowa, —, 271 N. W. 899, 109 A.L.R. 1054, supra), construes a statute dissimilar to the one under consideration. The Iowa court supports its holding upon the authority of Mutual Ben. L. Ins. Co. v. Com. 227 Mass. 63, 116 N. E. 469. The Massachusetts case had under consideration a statutory foundation where the conclusion is impelled that a company engaging exclusively in the transaction of annuity business, would be accurately described as in "the business of life insurance." Our statute defines "insures" and uses the term "premium" in connection with the business of insurance (Comp. Laws 1913, §§ 6458, 6529, 6531). These statutes denominate the consideration in payment of insurance as a "premium." Our statute does not define an annuity or refer to the consideration paid therefor as a "premium." The statute under consideration (1925 Supp. § 4924), or the statute (Comp. Laws 1913, §§ 4915, 4916 and 4931), providing for the contents of reports to be made by insurance companies forming the basis upon which the tax

is to be laid, do not specifically or by express reference mention the business to be taxed as an annuity business or that the considerations paid for annuity contracts are included in the term "gross premiums paid," as used in the statute. We are dealing here with a statute having to do with insurance. Not only does our statute provide for the organization of companies for the independent transaction of annuity business (§ 5205, 1925 Supp., 1913 Comp. Laws, as amended by chap. 93, Sess. Laws 1931), and not only is it supported by an array of respectable authority that annuity contracts are not insurance, but it is conceded by the parties to this litigation that the considerations received for annuity contracts were not received upon contracts of insurance. Taking the most charitable view of the correctness of plaintiffs' contention as to the right to levy a business franchise tax on the considerations paid for annuities under the statute in question, the right to do so still remains in grave doubt, if the conclusion be not forced that it is unsound. The levy of a general property, or excise, or business franchise tax, must be predicated upon clear and easily comprehended legislative authority. It may not rest, as the plaintiffs would have it, in obscure, doubtful judicial interpretation where the intention to levy such tax is not expressed in the statute.

GRONNA, Dist. J. (dissenting).

The district court held that annuity considerations were taxable and judgment was rendered accordingly. I favor affirmance.

The defendant is a foreign corporation, organized as a life insurance company. Since 1926 it has been doing business in this state, to wit: issuing policies of insurance and annuity contracts. During the years of 1926 to 1935, the defendant received $2,740,570.07 from the sale of annuity contracts in North Dakota. For the privilege of doing this annuity business, the defendant has not paid any taxes whatsoever. In this action the State of North Dakota seeks to recover the franchise tax of two and one-half per cent upon said sum of annuity considerations, pursuant to the provisions of § 4924, 1925 Supplement to the 1913 Comp. Laws (being Comp. Laws of 1913, § 4924, as amended, without substantial change, by Laws of 1921, chapter 79).

The defendant has paid the franchise tax imposed by § 4924, supra, upon all premiums for life insurance contracts issued in this state; but

the defendant has paid no tax of any nature upon the considerations received for annuity contracts issued in this state. Such annuity contracts were in a variety of forms and were represented by specimen copies, which are stipulated in evidence as Exhibits 1 to 57. In each of these forms of annuity contracts the consideration therefor is expressly referred to as a "premium." Some of the annuity contracts call for a "single premium" and others provide for the payment of an "annual premium."

Each year, the defendant filed with the Commissioner of Insurance an "Annual Statement," in each of which there appears a statement of total income wherein the total annuity business, throughout the United States and elsewhere, is reported (but without disclosing whether or not any part thereof was done in North Dakota). In such report of total income there appears a sub-title of "Total Gross Premiums," under which the amounts received from annuity contracts, as well as policies of life insurance, are classified as premiums.

(In my opinion, these annual statements should be made a part of the record on appeal, and, at conference I expressed the opinion that the case should be remanded, pursuant to chapter 214, Laws 1927, for that purpose. However, the other members of this Court intimated that the introduction of these annual reports into the record would not change their opinion even though it is disclosed therein that annuity considerations are classified as premiums.)

In my opinion, considerations received for life annuities issued in this state by a foreign life insurance company are taxable under the provisions of § 4924, supra. This conclusion is based upon three premises:

I. A franchise tax is imposed upon the gross amount of premiums received upon "business done" in this state by a foreign life insurance company. Section 4924, supra; Northwestern Mut. L. Ins. Co. v. Murphy (1937) — Iowa, —, 271 N. W. 899, 109 A.L.R. 1054.

II. The sale of annuity contracts is a part of the business done by a life insurance company. (§ 4836, 1925 Supplement to the 1913 Comp. Laws, being Comp. Laws 1913, § 4836, as amended by Laws 1917, chapter 140; Northwestern Mut. L. Ins. Co. v. Murphy, supra; Mutual Ben. L. Ins. Co. v. Com. (1917) 227 Mass. 63, 116 N. E. 469, cited in note 19 of 63 A.L.R. 720, and cited with approval in said

Iowa case at page 903 of 271 N. W. and pages 1059 and 1060 of 109 A.L.R. See the dissenting opinion of two justices and the concurring opinion of a third justice of the Appellate Division of the Supreme Court in People ex rel. Metropolitan L. Ins. Co. v. Knapp (1920) 193 App. Div. 413, 184 N. Y. S. 345, affirmed without opinion in (1921) 231 N. Y. 630, 132 N. E. 916, and discussed in the annotations in 63 A.L.R. at 719 and 109 A.L.R. at 1061.

III. According to the approved usage of the word "premiums," annuity considerations are regarded as "premiums" within the meaning of the taxing statute. Section 4924, supra; Northwestern Mut. L. Ins. Co. v. Murphy, supra; dissenting and concurring opinions of three of the five justices in People ex rel. Metropolitan L. Ins. Co. v. Knapp, supra.

## I.

Section 4924 imposes a tax upon "business done." Comp. Laws 1913, § 4924, provides that: "Every (foreign) insurance company doing business in this state . . . shall at the time of making the annual statement of business done, as required by law, pay to the commissioner of insurance two and one-half per cent of the gross amount of premiums received in this state during the preceding year. Upon payment of such sum the commissioner of insurance shall issue the annual certificates provided by law."

Section 4924 imposes a tax upon "premiums received." "Premiums received" on what? On policies of insurance alone? No. It is a statute of general application. It neither expressly includes policies of insurance nor expressly excludes annuity contracts. The words "premiums received" are a part of the same sentence wherein the Legislature is speaking of the subject of "doing business in the state" and "business done." "Words and phrases are construed according to the context . . . ." Comp. Laws 1913, § 7325. Thus, according to the context, the words "premiums received" refer back to the subject of "doing business" and "business done."

Section 4924 refers to the "annual statement of business done." Such a statement of "business done" is required by Comp. Laws 1913, § 4915, which provides, in part, that "Every insurance company doing *business in this state* must transmit to the commissioner of insurance

a statement of its condition and *business* for the year . . . ." (My italics.) The requirements of such an annual statement of business done, are set forth in Comp. Laws 1913, § 4916, which requires such a statement to "state particulars as follows: . . . 5. The *income* of the company during the preceding year, . . ." (My italics.)

In addition to the requirements of §§ 4915 and 4916, which apply to all insurance companies alike, Comp. Laws 1913, § 4931 further requires that ". . . every annual report of every life insurance company doing *business* in this state, shall contain an accurate, concise and complete statement of the following matters, to wit: . . .

"11. A complete statement of the profits and losses upon the *business* transacted during the year . . ." (My italics.)

Thus, reading § 4924 in the light of §§ 4915, 4916, and 4931, we see that the annual statement of a life insurance company must contain a complete report of the "business" done in this state including a report of the "income" therefrom.

The nature, object and purpose of the tax is disclosed in the last sentence of § 4924, which reads: "Upon payment of such sum the commissioner of insurance shall issue the annual certificates provided by law. Such provision "makes the tax a franchise or privilege tax." Continental Ins. Co. v. Smrha (1936) 131 Neb. 791, 270 N. W. 122 at 125. The object and purpose of the tax is to impose a tax upon business done in this state by foreign insurance companies, which otherwise would pay no taxes whatsoever for the privilege of doing business in this state.

In Northwestern Mut. L. Ins. Co. v. Murphy, supra, the Iowa court, construing a taxing statute similar to our § 4924, said at page 901 of 271 N. W. and at page 1058 of 109 A.L.R.: "The tax imposed by § 7022 partakes of the nature of a tax on business and of a license tax or condition required of corporations to enable them to continue business in this state. It is not a property tax. Scottish U. & Nat. Ins. Co. v. Herriott, 109 Iowa, 606, 80 N. W. 665, 77 Am. St. Rep. 548. As a prerequisite to transacting business in Iowa in 1934, plaintiff was required to pay as taxes a certain percentage of the gross amount of premiums received by it for business done in this state."

The primary purpose of § 4924 is to raise revenue. It is based on the theory that a foreign insurance company, permitted to come

into the state, should contribute to the public revenue in proportion to the benefits actually received. See Continental Ins. Co. v. Smrha, supra, 131 Neb. 791, at page 126 of 270 N. W. The taxes are upon the privilege of carrying on business in a corporate capacity in this state. The amount received from that business is the basis upon which the state reckons its compensation for the permission and protection given.

Therefore, giving a literal interpretation to the language of § 4924, in the light of the nature, object and purpose of such statute, we see that § 4924 imposes a tax upon the gross amount of premiums received from "business done" in this state by foreign insurance companies.

## II.

Section 4836 makes the sale of annuity contracts a part of the business done. Since an annuity contract is not strictly a contract of life insurance and inasmuch as the defendant is a foreign insurance corporation, was it authorized to sell annuity contracts in North Dakota? It did hold the certificates as required by § 4924, but such statute does not enumerate the kinds of business which may be carried on by insurance companies.

The defendant agrees that it was authorized to sell annuity contracts in this state; and the majority opinion herein concedes that § 4836, supra, vests "insurance companies with the power to engage in the business of granting, purchasing and paying of annuities."

Section 4836, supra (providing for the incorporation of insurance companies and enumerating the purposes for which they may be formed), authorizes insurance corporations ". . . to carry on the business of insurance, . . . including the granting, purchasing and paying of annuities. . . ."

Section 4836 discloses the legislative intention of including the sale of annuity contracts as a part of the "business" done by an insurance corporation, and this statutory authorization is applicable to foreign life insurance companies such as the defendant. This interpretation of such a statute is supported by the decision of Northwestern Mut. L. Ins. Co. v. Murphy, supra, wherein the Iowa tax statute, § 7022, Code of 1931, provided that every foreign insurance company

". . . shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it for business done in this state, . . ." (This statute is similar to our § 4924.)

Another Iowa statute, enacted in 1933, provided that "Any life insurance company organized on the stock or mutual plan may grant and sell annuities."

Construing that latter statute, which is like our § 4836, the Iowa Supreme Court said at page 902 of 271 N. W. and at page 1058 of 109 A.L.R.: "That these words 'business done in this state' were inclusive of the granting and selling of annuities was made definitely certain by legislative enactment prior to the year 1934. That is, the Legislature had identified the granting and selling of annuities as a part of the business permitted and anticipated to be done in this state by insurance companies in the enjoyment of their business licenses."

The Iowa court cites with approval the "somewhat analogous case" of Mutual Ben. L. Ins. Co. v. Com. (1917) 227 Mass. 63, 116 N. E. 469, supra, wherein the petitioner, a foreign life insurance corporation, was engaged in the two types of business, insurance and annuities. It was conceded by the Massachusetts court that a contract for an annuity is not strictly a contract of life insurance. See 63 A.L.R. 720, note 19. Such Massachusetts decision holds that although an annuity contract is not strictly a contract of life insurance, nevertheless the issuing of annuity contracts is a part of the *"business* of life insurance." The petitioner brought that action for the abatement and refund of a tax paid, under protest, upon annuity contracts. The statute under construction (hereafter referred to as "§ 26, as amended") provided that a foreign insurance company engaged in the business of life insurance within this Commonwealth shall annually pay an excise tax of one quarter of one per cent upon the net value of all policies in force . . . (and) . . . every company . . . shall annually . . . make a return to the tax commissioner . . . giving . . . the total number of policies in force . . . (and) . . . details relating to each policy of ordinary business in force . . ." Another Massachusetts statute, referred to as § 66 of the Statutes of 1907, chapter 576, provided that: "All corporations . . . doing business in this Commonwealth . . . conditioned upon the con-

tinuance or cessation of human life, or involving an insurance guaranty, contract or pledge for the payment of endowments or annuities, shall be deemed to be life insurance companies . . ."

Construing these statutes, the Massachusetts decision reads at page 65 of 227 Mass. and at page 470 of 116 N. E.: "And the conclusion is irresistible that if the petitioner had issued only contracts for the payment of annuities, it must be deemed to be a life insurance company. If so it would be accurately described as in 'the business of life insurance.' It is none the less so engaged because it also issues policies of life insurance. The words 'the business of life insurance,' 'all policies in force,' 'total number of policies in force,' 'ordinary business,' 'each policy of ordinary business,' and 'the amount insured and the net value' found in § 26, as amended, are consequently to be read in connection with the spirit and purpose of § 66 of the Stat. of 1907, chap. 576. While language more technically appropriate might have been used, the business of issuing contracts for annuities is under the statute 'the business of life insurance,' and if the word 'policy' ordinarily imports that at death a certain sum will be payable by the insurer, yet a 'policy' is a contract, and 'each policy of ordinary business' where the insurer engages solely in providing such security would cover the business of issuing contracts of annuity."

In the New York case of People ex rel. Metropolitan L. Ins. Co. v. Knapp (1920) supra, in a dissenting opinion, two of the five justices, construing two New York statutes similar to our §§ 4836 and 4924, said at pages 419 and 420 of 193 App. Div. (184 N. Y. S. 345): ". . . the Legislature has considered the granting of annuities to be a part of the life insurance business. . . . We must consider that the Legislature intended to impose an equal tax upon all corporations engaged in the insurance business. There is no reason why a life insurance company, which has the power as such to grant annuities, should escape taxation on account of the annuities when it is taxed on account of the life insurance. The act should be construed in a manner which will make it reasonable and just and in a way not to do violence to the legislative intent. . . . The payments to be made by the company (upon an annuity contract) depend upon the life of the person making the payment, or the annuitant mentioned, so that the payment in either case (either an insurance policy or an annuity contract) depends

upon a human life. The company, in either case, for a consideration, agrees to make certain payments during the life, or at the end of life. The risks are substantially alike, but the manner in which the company computes and pays the value of its contract is arrived at in different ways. In effect, under the law, an insurance company is a savings institution which uses the trust funds committed to it for the payment of the life policy to the insured or for the life annuity to the annuitant. In either case it is paid for the life risk. The Legislature, with reason, considered the business of granting annuities as a life insurance business and the consideration for it a premium."

In such New York case, a third justice held in a similar vein.

In my opinion, the foregoing authorities support my interpretation of § 4836, namely; that § 4836 makes the issuing of annuity contracts a part of the business done by an insurance company.

## III.

Annuity considerations are "premiums" within the meaning of the taxing statute, § 4924.

A. Construed in the light of § 4836, the taxing statute, § 4924, imposes a tax upon premiums received from annuity contracts.

It appears from what has been said above that § 4924 imposes a tax upon "business done;" and that § 4836 makes annuity contracts a part of the business done; and thus, construed in the light of § 4836, § 4924 imposes a tax upon premiums received on annuity contracts. This being so, the words "premiums received" must necessarily refer to the considerations received on annuity contracts.

Such an interpretation of the word "premiums" is in harmony with the approved trade usage, that is to say, life insurance companies engaged in the annuity business customarily refer to annuity considerations as "premiums" in their annual statements and in the annuity contracts themselves. But before showing that such approved usage exists, I shall refer to some matters found in the majority opinion herein.

(III) B. Foreign Decisions. Admittedly, the tax imposed by § 4924 is applicable to premiums received on policies of life insurance; and the defendant herein has paid the tax on such premiums. Here

the question is whether such franchise tax is applicable to the considerations received for annuity contracts.

Are the considerations paid for annuity contracts to be regarded as "premiums on policies of insurance"? No, for the reason that an annuity contract is not a policy of insurance. This was the situation in Daniel v. Life Ins. Co. (Tex. Civ. App.) 102 S. W. (2d) 256 (cited in the annotation in 109 A.L.R. 1060 at 1061, and cited in the majority opinion herein). There the taxing statute, by express limitation, was applicable only to "premiums . . . on policies of insurance." The Texas statute is different from our taxing statute, § 4924. The Texas statute is, by express limitation, applicable only to premiums received "on policies of insurance;" while our § 4924 contains no such express limitation, and is expressly applicable to premiums received upon "business done." Thus, because of this difference in statutes, the Texas case is not in point in the matter of interpreting a statute of the type of our § 4924.

At the outset, the majority opinion herein attacks the problem of whether or not the determinable "premiums" (in § 4924) includes the determinate "annuity considerations;" and the conclusion reached by the majority is that an annuity consideration is not a premium; that the word "premiums" includes only the considerations paid for policies of insurance. In support of such holding the majority opinion cites the Texas case, supra, which is not in point; and two decisions of Pennsylvania (1916) and New York (1920). It is stated in the annotation at 109 A.L.R. 1060 that these three decisions, together with the Iowa case of Northwestern Mut. L. Ins. Co. v. Murphy, — Iowa, —, 271 N. W. 899, 109 A.L.R. 1054, supra, "are the only cases which have been found touching the point" of "whether the word 'premium' in a taxing statute may include money paid for annuity contracts."

Wherein do I differ from the majority opinion herein and its two supporting decisions of Pennsylvania and New York? In my estimation the majority opinion herein and such two decisions are based upon a false premise, to-wit: the premise that an annuity consideration is not a premium.

Generally speaking, the reasoning of the majority opinion and its two supporting decisions is somewhat as follows:

"Annuity considerations are not premiums; only the considerations received on policies of insurance are premiums. (false premise)

"Annuity contracts are not policies of insurance. (true premise)

"Conclusion: Therefore annuity considerations are not taxable. (logical conclusion from false premise; result erroneous).

The Pennsylvania case (1916) is Com. v. Metropolitan L. Ins. Co. 254 Pa. 510, 98 A. 1072, holding that annuity considerations were not taxable under a statute imposing a franchise tax upon premiums received. Such Pennsylvania case asserts its "false premise" in a somewhat qualified manner at page 514 of 254 Pa.: "The consideration for an annuity contract is not generally regarded as a premium . . . ."

This statement is the only thing that appears in the body of the Pennsylvania opinion upon the vital issue of whether or not an annuity consideration is a premium. No authorities are cited and no reasons are given. The only authority is the court's own statement to that effect: like Atlas supporting the world, and the world supporting Atlas.

The New York case (1920) is People ex rel. Metropolitan L. Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed without opinion in 231 N. Y. 630, 132 N. E. 916, supra. It cites the Pennsylvania case as its only authority. Only two of the five justices of the Appellate Division held that annuity considerations are not premiums; the other three justices held that annuity considerations were premiums within the meaning of the taxing statute (although one of the three concurred specially on a ground that we are not here concerned with).

Concerning such New York decision, the following comment appears in the annotation in 109 A.L.R. 1060 at 1061: "Two dissenting justices, however, took the view that the Legislature had considered the granting of annuities to be part of the life insurance business, and said that there was no reason why a life insurance company, which had the power as such to grant annuities, should escape taxation on account of the annuities, when it was taxed on account of the life insurance, and that 'the Legislature, with reason, considered the business of granting annuities as a life insurance business, and the consideration for it a premium,' and concluded that 'the word

"premium," when we know the legislative intent from the general purport of the law, may as well cover a payment for a life annuity policy as for a life policy.' And another justice, who concurred in the result, stated that it seemed to him that the Legislature must have understood that the word 'premiums' covered the income from the sale of annuities; otherwise that branch of the business would have been specifically exempted from the provisions of the taxing statute."

Northwestern Mut. L. Ins. Co. v. Murphy, 223 Iowa, 333, 271 N. W. 899, 109 A.L.R. 1054, supra, is the most recent decision, being decided in March, 1937, all eight of the justices concurring. The Iowa court criticizes and distinguishes the Pennsylvania and New York decisions and refuses to follow those decisions.

(III) C. "Annuity companies." The majority opinion herein reads: "The Legislature did in 1891 authorize the incorporation of insurance companies with the power to engage in the business of granting, purchasing and paying of annuities. And in 1897 (chapter 143, Sess. Laws 1897, now § 5205, Comp. Laws 1913, supra) the Legislature authorized the incorporation of annuity companies. There is, however, no statute requiring that annuity companies shall pay a tax on premiums received similar to that imposed on insurance companies under the provisions of § 4924."

Yes, it would be unfair if the Legislature has imposed a tax upon annuity considerations received by foreign insurance companies, under the provisions of § 4924; while, at the same time, it has not imposed any such tax upon annuity considerations received by foreign "annuity companies." But the implication that foreign "annuity companies" are authorized to engage in the business of granting and selling life annuities in this state, is erroneous. In fact, it is erroneous to assume that domestic "annuity companies" are authorized to engage in the annuity business. (Of course, even though domestic "annuity companies" were authorized to engage in the annuity business and to receive annuity considerations tax free, this would not be unfair to domestic insurance companies engaged in the annuity business for the reason that § 4924 applies only to foreign insurance corporations.)

Chapter 31 of the Civil Code provides for the "organization and management of annuity, safe deposit and trust companies," which are commonly referred to as "trust companies" but which are seldom, if

ever, referred to as "annuity companies." Chapter 31 comprises Comp. Laws 1913, §§ 5205 to 5220, inclusive. Paragraph 2 of § 5210 provides, in effect, that such companies may take and hold "any real estate or personal property upon trust . . . and to execute and perform any and all such legal and lawful trusts in regard to the same upon the terms . . . imposed" by the trust instrument, which may be in the form of a deed, will, decree, or contract. It is pursuant to this corporate power that trust companies become authorized to pay charges on land and annuities. However, such companies are not authorized to grant and sell life annuities; but, rather, such an annuity is created by the trust instrument whereby such a company becomes a trustee for the disbursement of the annuity to the beneficiaries of the trust. Consequently, such companies would pay no tax upon an annuity business for the simple reason that they are not authorized to engage in the annuity business, in the sense that we are concerned with annuities in this case.

"We are not here concerned with annuities created by deed or will, which are of ancient origin. The granting of annuities by corporations upon consideration paid is a more recent practice. It appears to have been engaged in first by insurance companies to which it is largely confined at the present day." Daniel v. Life Ins. Co. (Tex. Civ. App.) 102 S. W. (2d) at 260, supra.

Same as the above type of argument is that resorted to by the State, plaintiff herein: why would the Legislature tax the sale of insurance contracts and not tax the sale of annuities? If we agree that § 4924 imposes a franchise tax on the privilege of doing business in this state, then on what basis can we reconcile a holding which would tax a foreign insurance company which does an insurance contract business in this state, and on the other hand, does not impose even a single penny of tax upon a large annuity business done in this state by another foreign insurance company? In the same vein is the comment appearing in the annotation in 109 A.L.R. 1060 at 1061, wherein the New York case of People ex rel. Metropolitan L. Ins. Co. v. Knapp, supra (cited in the majority opinion herein) was commented on as follows: "Two dissenting justices . . . said that there was no reason why a life insurance company, which had the power as such

to grant annuities, should escape taxation on account of the annuities, when it was taxed on account of the life insurance, . . ."

In Northwestern Mut. L. Ins. Co. v. Murphy, 223 Iowa, 333, 271 N. W. at 902, 109 A.L.R. at 1058, supra, we find this criticism of such a result as is reached by the majority opinion herein and its two supporting decisions: "It would cause the result that if a foreign insurance company engaged only in the annuity business, it would not only be exempt from taxes, but would become a source of loss to the state to the extent of the expense of its supervision."

(III) D. The "annual statement" statutes 4915, 4916 and 4931. Above, we discussed these three statutes and found (interpreting § 4924 in the light of their provisions) that the annual report of a life insurance company must contain a complete report of the "business" done in this state including a report of the "income" therefrom.

The majority opinion, after setting forth the provisions of § 4916, makes this comment thereon: that no reference is made to annuities or premiums received for annuities; that § 4916, as well as § 4924, was originally enacted prior to the original enactment of § 4836 (which authorizes the doing of an annuity business); that therefore annuities were not within the contemplation of the Legislature when §§ 4916 and 4924 were enacted.

Section 4916 provides that the annual statement must state:

"5. The income of the company during the preceding year, specifying: (a) . . . (b) The whole amount of cash premiums received, stating separately the amount of premiums received on policies written in the state. . . ."

Section 4916 is a statute of general application. It does not expressly refer to and include policies of insurance and it does not expressly exclude annuity contracts. There is no express inclusion of the one or express exception of the other. The same is true as to the provisions of § 4931, supra.

The word "policies" in 5(b) of § 4916 may include annuity contracts as well as insurance contracts. The Massachusetts court in Mutual Ben. L. Ins. Co. v. Com. supra, expressly held that the word "policy" includes an annuity contract. Thus, in 227 Mass. at 65, and 116 N. E. at 470, we find this: "While language more technically appropriate might have been used, the business of issuing contracts

for annuities is under the statute 'the business of life insurance,' and if the word 'policy' ordinarily imports that at death a certain sum will be payable by the insurer, yet a 'policy' is a contract, and 'each policy of ordinary business' where the insurer engages solely in providing such security would cover the business of issuing contracts of annuity."

Returning to the reasoning of the majority opinion: that since §§ 4924 and 4916 were originally enacted in 1885 and that since it was not until six years later, in 1891, that § 4836 was enacted, authorizing the doing of an annuity business; that therefore annuities were not within the contemplation of the Legislature when the taxing statute, § 4924, was enacted: I disagree with this line of reasoning on two general grounds. In the first place these statutes have been reenacted since the original enactment of § 4836 in 1891 and therefore, § 4924, the taxing statute, was, at the time of reenactment, intended to apply to "business done," which then included the annuity business. In the second place, § 4924, as originally enacted, was a statute of general application without exceptions, that is, § 4924 imposed a tax upon business done. Therefore, when the annuity business was authorized by the Legislature in 1891 as a part of the business done by an insurance company, the annuity business, by operation of law, fell within the provisions of the taxing statute, § 4924. (N. B. In the Iowa case, too, the taxing statute had been enacted first.)

(III) E. Approved usage.

1. General definitions may be conflicting and are not exhaustive and therefore are unsatisfactory.

As stated in the majority opinion, "the dictionaries and legal encyclopedias give the word 'premium' a diversity of meanings."

In State v. Hogan, 8 N. D. 301 at 303, 78 N. W. 1051 at 1052, 45 A.L.R. 166, 73 Am. St. Rep. 759, in referring to a statutory definition of insurance (namely, § 4441 Rev. Codes 1895, which now is § 6458 Comp. Laws 1913) this was said: "Necessarily in defining insurance in a single sentence, only the most general terms can be used, and any general definition must be extended to cover the ever-changing phases in which the subject is presented to the public."

This same attitude was taken by the Iowa court in Northwestern Mut. L. Ins. Co. v. Murphy, — Iowa, —, 271 N. W. at 900, 109 A.L.R. at 1056, supra: "plaintiff concludes that, because the word 'premiums'

is used, there is no intention expressed in the statute that considerations realized from annuity contracts be taxed. To establish such premise plaintiff cites several cases in which it is said in substance that the definition of the word 'premium' as used in the law and business of insurance is the consideration paid for a contract of insurance. Plaintiff relies on this definition. But a mere definition is not always a safe foundation for correct conclusions. One reason is that, except in mathematics, it is difficult to frame *exhaustive* definitions of words. . . . Consequently, unless the authority offering the definition has undertaken the difficult task of framing a definition that is exhaustive, and has succeeded in such undertaking, error may result if there be reliance upon the element of exhaustiveness. Plaintiff's point depends on acceptance of these definitions as being exhaustive. But such they were not in our opinion. . . . Definitions differ in their character according to the nature of the thing defined. . . . Looking upon these definitions as having been pronounced primarily for application to the issues and facts these courts had in hand, we are unable to agree with plaintiff that these courts intended to go any further, or to consider a question not in issue, that is whether the word 'premium' may not in fact also be applied to contracts other than those for insurance. We think the definitions in the two above cases were intended to be used in pointing out the obvious, that is, that amounts paid for life insurance are premiums."

(III) (E) 2. There was no departmental construction but merely an unwitting acquiescence.

The majority opinion reads: "At all times prior to 1936 the departmental construction was that premiums taken for annuity contracts were not within the contemplation of the Legislature when it used the words 'gross premiums' in § 4924.

In my opinion this is an erroneous conclusion. The evidence is not sufficient to establish that the Insurance Commissioner or his legal advisor, the Attorney General, had, prior to 1936, ever placed any "departmental construction" one way or the other upon this matter. Nor is there sufficient evidence to establish that the Insurance Commissioner or the Attorney General or the Legislature had any knowledge that the defendant insurance company was doing an annuity business in this state. The annual "Statement of Taxable Premiums,"

which the defendant made upon a form prepared by the Insurance Commissioner, on a single sheet of paper, merely called for a statement of "Gross premiums received during 19— (see schedule 'North Dakota Business') ................ $———." Such statement contained no express reference to annuity or insurance contracts. In my opinion, such form of statement required foreign insurance companies to state all of the premiums received upon their North Dakota business, regardless of whether such premiums were received on annuity contracts or on policies of insurance. It was required in order that the Insurance Commissioner might know the numerical base upon which to compute the two and one-half per cent tax imposed by § 4924.

In the written stipulation of facts, it appears that although in the defendant's annual statements of its total income received in the United States and elsewhere, the amounts received as premiums from annuity contracts were disclosed; that it was not disclosed whether any part of those annuity premiums were received in North Dakota. The written stipulation reads: ". . . said annuity considerations . . . were not included in the sums and premiums shown by the annual statements for said years (1926 to 1935, inclusive) to have been received by defendant in the course of the business transacted by it within said state, nor were the said annuity considerations included in the gross premiums or taxable premiums as shown by the 'Statement of Taxable Premiums' for said years to have been received by defendant in the course of the business transacted by it within such state; . . ." There is nothing in the record on appeal which shows that the Insurance Commissioner did have actual knowledge of the defendant's failure to report its annuity business. On the contrary, the record shows that the defendant did not give to the Insurance Commissioner any notice or information whatsoever that it was doing an annuity business in North Dakota. The record is devoid of any evidence of any ruling or opinion made by either the Insurance Commissioner or his legal advisor, the Attorney General, prior to 1936. In my opinion, the evidence does not support the conclusion that a departmental construction was made by the Commissioner of Insurance. The evidence merely supports a conclusion that there was an unwitting acquiescence on his part in the defendant's practice.

(III) (E) 3. Among the life insurance companies which are en-

gaged in the annuity business, the approved usage of the word "premi·· ums" is to specifically denominate annuity considerations as premiums.

"Words and phrases are construed according to the context and the approved usage of the language; . . ." § 7325, supra.

Has the insurance trade adopted an approved usage of the term "premiums"? Clearly it has in so far as policies of life insurance are concerned. And I am of the opinion that life insurance companies have an approved usage for the word "premiums" in so far as it refers to annuity considerations. Among the life insurance companies which are engaged in the annuity business, the approved usage of the word "premiums" is to specifically denominate annuity considerations as premiums. As stated in the first part of my opinion, annuity considerations are specifically denominated as "premiums" in the annuity contracts issued (see specimen copies, Exhibits 1 to 57) and in the annual statements made by the defendant. So, here we find tangible evidence of an approved usage which specifically classifies annuity considerations as premiums.

In Northwestern Mut. L. Ins. Co. v. Murphy, supra, the facts of that case too were that the forms of the annuity contracts issued by the foreign life insurance company were in evidence and that such annuity contracts specifically denominated the considerations therefor as "premiums." With regard to this usage, the Iowa case reads, continuing from my last quotation (in III E 1) therefrom: "But if we could be in accord with plaintiff that the definitions from other jurisdictions were undertakings to frame *exhaustive* definitions, nevertheless there is still the question, in view of the conceded facts before us, whether we can agree that such courts successfully did so. This is because it is the record in this case that the word "premium" is in fact used in a more general sense than that urged by plaintiff. The forms of the annuity contracts issued by plaintiff, the contracts that are the subject to this controversy, are in evidence. In all of these contracts is found the recital of the parties that 'in consideration of the payment of a single *premium* of (the agreed amount) the receipt of which is hereby acknowledged, the Northwestern Mutual Life Insurance Company promises to pay . . . a life annuity . . .' (Italics ours.) In argument plaintiff frankly admits that it does so use the word 'premium' in its annuity contracts. Plaintiff further concedes

that 'most other companies' do likewise. From this record it is our opinion that in interpreting the words chosen by the Legislature for use in this statute, it would be hardly within reason to hold that there was an impossibility that the Legislature could adopt and intend to use the word 'premiums' in the same manner in which it was concededly and commonly used by the insurance companies themselves upon whom the tax is imposed. It might well be that in taxing insurance companies the Legislature sought to talk their language. To hold that the alleged definition is in fact exhaustive of the uses of the word 'premium' would be arbitrary and inconsistent with the facts in this case. We are unable to adopt plaintiff's premise that the word 'premium' is necessarily inapplicable to annuity contracts." The Iowa court then held that considerations paid to foreign insurance companies for the issuance of annuities were "premiums" within the purview of the statute imposing a gross premium tax on business done in the state, so as to be taxable thereunder. "I cannot find that any other term has been used to designate the amount paid for an annuity contract than the word 'premium'." Kiley, J. (concurring) in People ex rel. Metropolitan L. Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed without opinion in 231 N. Y. 630, 132 N. E. 916, supra.

NUESSLE, J. (on rehearing). On petition of the plaintiffs a rehearing was ordered in the above entitled matter. The case was fully reargued. After careful consideration the undersigned are agreed that the opinion heretofore handed down should stand.

HUTCHINSON and McFARLAND, Dist. JJ., concur.

GRONNA, Dist. J. (dissenting). I adhere to the views set forth in my dissent heretofore filed.